## STATE v. CHARLES RONALD GRAY.

(Filed 21 September, 1966.)

**1. Criminal Law § 71—**

It is well settled law in this State, consistently followed for at least 140 years, that testimony of a confession or admission made by a defendant charged with a crime is not admissible in evidence over his objection unless it was made voluntarily and understandingly, without inducement of hope or fear.

**2. Same—**

A defendant's mental capacity and whether he was in custody at the time of making the statement are circumstances to be considered, along with others, upon the question of whether his statement or confession was voluntarily and understandingly made without inducement or fear, but the mere fact that the confession was made while defendant was in the custody of police officers does not, of itself, render the confession incompetent.

**3. Same—**

Whether the alleged confession of defendant was voluntarily and understandingly made is a question of fact to be determined by the trial judge upon the *voir dire*, in the light of the evidence offered by the State and the defendant and the court's observation of the demeanor of the witnesses, and the court's ruling must be supported by its findings of fact incorporated in the record.

**4. Same—**

The findings of fact by the trial judge upon the *voir dire* as to the voluntariness of a confession are conclusive if they are supported by competent evidence in the record, and no reviewing court may properly set

aside or modify these findings if they are supported by competent evidence.

**5. Same—**

Even though the testimony of the defendant is to the effect that he did not make any statement to the officer, it is incumbent upon the court, upon the *voir dire*, to hear the evidence and find the facts with respect to whether the confession, if made, was made voluntarily and understandingly.

**6. Same;   Constitutional Law § 1—**

In determining the admissibility of an alleged confession by defendant, the courts of this State must protect defendant's rights not only under the laws of this State but also under the Due Process Clause of the 14th Amendment to the Constitution of the United States, and, in regard to the latter, the State court is bound by the interpretation placed upon the 14th Amendment by the Supreme Court of the United States. The decision of the Supreme Court of the United States in *Miranda v. Arizona*, 384 U.S. 436, is controlling in prosecutions commenced after the announcement of that decision if it is applicable to the facts of the case.

**7. Same—**

Where the evidence is to the effect that the confession of defendant, if made at all, was made within a few minutes after his arrest and was made in a private home where defendant had voluntarily gone, accompanied by his cousin and a police officer, that the officer informed defendant of the nature of the charge against him, of his right to remain silent, of the possible use against him of any statement he might make, and of his right to confer with counsel before making any statement whatsoever, and the record discloses further that defendant was able to employ counsel, *held,* the mere fact that defendant was not advised that if he were an indigent he was entitled to have a lawyer appointed to represent him does not render the statement of defendant incompetent under the decision in *Miranda.*

**8. Criminal Law § 162—**

The refusal to permit questions designed solely to elicit repetition of the witness' testimony theretofore entered cannot be held for prejudicial error.

**9. Same—**

Any error in sustaining the objection to a question asked a witness is cured when the witness is immediately thereafter allowed to testify in regard to the matter.

**10. Criminal Law § 161—**

A *lapsus linguae* in the charge not called to the attention of the court at the time will not be held for prejudicial error when it is apparent from the record that the jury could not have been misled thereby.

**11. Criminal Law § 109—**

· An instruction will not be held for prejudicial error upon the contention that the court, in stating that the two offenses charged were separate and distinct and that defendant might be found guilty of the one and‐ not

guilty of the other, failed to charge that the defendant might be found not guilty of both charges when the court thereafter instructs the jury separately as to each count in the indictment that it would be the duty of the jury to render a verdict of not guilty if it had a reasonable doubt as to defendant's guilt on that charge.

**12. Criminal Law § 131—**

When the sentence imposed is well below the maximum permitted by the applicable statutes, the contention that the sentence is unduly severe must be addressed to the power of executive clemency.

APPEAL by defendant from *Mintz, J.,* June 1966 Criminal Session of MARTIN.

The defendant was tried under an indictment, proper in form, charging him and his cousin, Van Gray, with felonious breaking and entering and with larceny by breaking and entering on 27 July 1965. He was represented, both in the superior court and in this Court, by two attorneys of his choice. He was found guilty as charged. On each count he was sentenced to confinement in the State Prison for not less than four nor more than six years, the two sentences to run concurrently.

The defendant and Van Gray were both arraigned at the September-October 1965 Session of the superior court. The defendant then entered a plea of guilty after signing a waiver of counsel. He was then sentenced to confinement in the State Prison for a term of not less than four nor more than seven years and began the service of that sentence. Van Gray received a suspended sentence and was placed on probation. Thereafter, the defendant filed a petition for post conviction review and on 19 January 1966 a new trial was ordered as to him. This Court denied the petition of the State for *certiorari* to review the order granting such new trial. The present appeal is from the judgment entered pursuant to his conviction at the second trial.

The session of the superior court at which the second trial occurred convened 13 June 1966 (erroneously stated in the record as 18 June 1966). On that date the Supreme Court of the United States announced its decision in *Miranda v. State of Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. It is stated in the defendant's brief, and not controverted by the State, that the trial of the defendant actually commenced on 15 June 1966, and that the jury returned its verdict on 16 June 1966.

At this second trial Deputy Sheriff Beach and Police Officer Roberson were permitted, over objections, to testify to certain statements made by the defendant, while he was in custody, as set forth below. The defendant contends that the admission of this evidence violated his rights under the Constitution of the United States, as

interpreted by the Supreme Court of the United States in the *Miranda* case.

At the second trial the defendant also excepted to numerous other rulings and instructions by the trial judge, but in his brief he argues only the foregoing contention with reference to the *Miranda* case, three rulings of the court excluding evidence offered by the defendant, and the inclusion in the charge to the jury of the following statement:

> "The Court instructs you that you may return a verdict or any one of the following verdicts which you may find to be supported by the evidence when you determine what the facts are and apply it to the law as the Court gives you the law. That is, you may find him Guilty as charged or you may find him not guilty of breaking and entering and guilty of larceny or you may find him guilty of larceny and not guilty of breaking and entering. They are separate offenses."

Before the testimony of either officer as to statements by the defendant was admitted, the court heard on *voir dire*, in the absence of the jury, the testimony of Deputy Beach, the testimony of the defendant's cousin, William Lee Gray, and that of T. A. Weaver, the owner of the building allegedly broken and entered and of the personal property allegedly stolen. The court, upon this evidence, found:

> "The Court finds that the defendant was advised at the time of his arrest or immediately thereafter that he had a right to have and confer with counsel. That he had a right to remain silent or to make a statement and that any statement he made might be used against him. The Court being of the opinion that the defendant fully understood his rights, finds that any statement that the defendant made at the time or immediately thereafter to Deputy Sheriff Beach was freely, voluntarily and understandingly made, without any promise of reward, duress or other pressure."

Before the jury was excused for the examination of these witnesses on *voir dire*, T. A. Weaver, the owner of the property, had testified, in the presence of the jury, that a house belonging to him had been broken into, a window pane having been broken with a brick, and that certain specified properties, including approximately $5.00 in money, an old clock, an old writing slate, and several old picture frames, were missing, all of which facts he had reported to Deputy Beach. He had also testified, in the presence of the jury, that the defendant came to his home with another boy and said

that he "had the stuff and he wanted to apologize," asking Mr. Weaver to drop the charge.

Also, prior to the said *voir dire* examinations concerning statements by the defendant, Van Gray, the original codefendant, was called as a witness for the State and testified, in the presence of the jury, that he and the defendant went to the building in question in the defendant's 1965 Ford automobile; that the defendant broke the window and both of them entered the building and took therefrom the picture frames, the clock and the money which they found in a tin box within a trunk. Van Gray admitted that this was contrary to his testimony at the defendant's post conviction hearing. Van Gray further testified that at the time of his own arrest, prior to the arrest of the defendant, he had "confessed to Deputy Beach and had told the deputy that the defendant was with him at the time of the break-in.

Prior to the above mentioned *voir dire* examination concerning statements by the defendant, and solely for the purpose of corroborating Van Gray's present account, his probation officer, F. Webb Williams, was permitted to testify, in the presence of the jury, to a conversation with Van Gray in which Van Gray recounted the facts in accordance with his present testimony and contrary to his testimony at the defendant's post conviction hearing.

Also, prior to such *voir dire* examination Deputy Beach testified, in the presence of the jury, that in his investigation of the break-in he talked to Van Gray. Solely for the purpose of corroborating Van Gray's present account, Deputy Beach was then permitted to testify that Van Gray told him he and the defendant had gone to the Weaver house in the defendant's automobile; that the defendant had knocked out a window pane and that they had taken some old picture frames, an old clock and some money out of a trunk.

Deputy Beach testified, in the presence of the jury, that he proceeded to look for the defendant and found him at the home of Mr. Weaver, together with Billy Gray, brother of Van Gray. He thereupon put the defendant under arrest and "told him he was charged with a felony, breaking and entering and he did not have to say a word." He advised the defendant at the time of the arrest that "he would have time for a lawyer if he wanted one." He also at that time advised the defendant that "anything he said might be used against him in court."

Thereupon, the jury was excused and the witnesses testified on *voir dire,* in the absence of the jury, in substance as follows:

(1) *Deputy Sheriff Beach* testified that he had a conversation with the defendant in the presence of Mr. Weaver and Billy Gray.

He did not threaten the defendant in any way. He did not promise the defendant anything. He did not tell him in any manner that the court would be lighter upon him if he would make a statement. He did nothing to induce the defendant to make a statement. He advised the defendant that he "had a right to remain silent," and that "anything he said might be used against him in a court of law." He further advised the defendant that "he could employ counsel." The defendant did not ask for any attorney to be obtained for him and did not ask to be allowed to make a telephone call to any attorney. The defendant then made a statement to Deputy Beach. He was then carried to the police station and there requested, and was granted, permission to make a telephone call, this being some twenty or thirty minutes after his statement to Deputy Beach. The defendant did not ask Deputy Beach to communicate with any lawyer for him, nor did he ask to see his mother. Deputy Beach informed the defendant that Van Gray had implicated him. Before the defendant made his statement to Deputy Beach, the latter told the defendant that he was under arrest for breaking and entering and larceny at the Weaver house, that "anything he said would be held against him," and that "if he wanted time to get a lawyer before we proceeded he could have that." The defendant replied that he did not want a lawyer and that he wanted to give the articles back to Mr. Weaver. He asked Deputy Beach, "Couldn't we just drop it right here, settle it right here?"

(2) *William Lee Gray,* brother of Van Gray, testified that he was present in the Weaver home at the time Deputy Beach informed the defendant that he was under arrest, that he did not hear the deputy say anything else to the defendant except that he wanted the defendant to go with him to the scene of the alleged offense, that he does not remember hearing the deputy ask the defendant whether he wanted a lawyer or whether he wanted to make a telephone call, and that he did not hear Deputy Beach make any suggestion about the defendant's being entitled to counsel. He further testified that he, himself, has been convicted on two counts of breaking and entering. (He is not charged with participation in the offense now in question.) He and the defendant were at the Weaver house when Deputy Beach arrived. He heard Mr. Weaver tell Deputy Beach that the defendant wanted to give the articles back to Mr. Weaver and wanted Mr. Weaver to drop the charges. Thereupon, Deputy Beach put the defendant under arrest. The defendant then "explained that he had taken the stuff and he wanted to return it or he had it and wanted to return it." The witness does not remember whether the defendant's word was "taken" or "had." He heard no

confession by the defendant at the Weaver house, no admission and no statement that he went in Mr. Weaver's house.

(3) *T. A. Weaver* testified that he, Deputy Beach, Billy Gray and the defendant were all in the room together and he heard the conversation between the deputy and the defendant, that Deputy Beach put the defendant under arrest and told him he could get an attorney if he wanted it, and that the deputy told the defendant that anything he said could be used against him. He thinks the deputy told the defendant he did not have to make any statement.

Thereupon, the jury returned to the courtroom. The court overruled the objection of the defendant, and Deputy Beach testified in substance as follows:

The defendant stated to Deputy Beach that he would like to settle the whole thing and bring back the articles stolen from Mr. Weaver. Deputy Beach told the defendant that he was under arrest and that it would be a matter for the court to decide. The defendant, Mr. Weaver and Van Gray then accompanied Deputy Beach out to the scene of the alleged crime. There, the defendant stated that he had taken a brick and broken out the window, that he had climbed into the window first, going in because he wanted to see if he could find an old piano, for which he had a buyer, that having entered the house, they decided to take the slate, the old picture frames and the clock; that they broke into the trunk and, using a pair of scissors, prized open the little green tin box which was in the trunk, that in the box they found two two-dollar bills and change amounting to approximately another dollar, and that they divided the money, the defendant taking one of the two-dollar bills and the other articles. Deputy Beach and Officer Roberson recovered some of the picture frames from beneath a barn near the defendant's home, the defendant having shown the officers where the picture frames were. In the presence of the defendant, the defendant's mother stated to Deputy Beach that the defendant told her he had purchased these articles at an auction sale in Tarboro, the defendant making no comment to this statement by his mother. He proceeded to the attic of his home and brought down and gave to the deputy the remaining picture frames, the slate and the clock.

Deputy Beach then advised the defendant's mother that the defendant had to go to the police station with him, and there would be a hearing before a justice of the peace. He advised her to have counsel for the defendant if she wanted one. She replied that "she did not have any money to spend on that boy." She went to the police station shortly thereafter. The defendant was not locked in jail but was allowed bond, which he secured immediately so that he spent no time in jail prior to his trial.

The State then rested and the defendant took the stand in his own behalf. He testified in substance:

At the time of his arrest and of his conversations with Deputy Beach, he was eighteen years of age and had graduated from high school. Thereafter he attended college. He did not break into the house and did not steal the articles in question. On the date of the alleged offense he did not go anywhere with Van Gray. Van Gray brought to him and gave him the picture frames, the clock and slate, which were antiques and which the defendant then cleaned and repaired, this being his hobby. He has not had the money or the tin box from which it is alleged to have been taken. Van Gray did not tell him the articles so given to him had been stolen. He placed the large picture frames under the near-by barn for fear his mother would throw them away if he took them into the house. When he discovered these articles had been stolen, he went to Mr. Weaver and told him he "had the stuff and would bring it back to him." While they were talking Deputy Beach came in and "in just a few minutes" put him under arrest without telling him anything about making a statement, hiring a lawyer or anything of that kind. He went to the police station but made no statements there. When in the presence of his mother and uncle, Deputy Beach stated that he (the defendant) had broken into the trunk he denied doing so. He has never admitted to anybody that he broke into the house and took anything out of it. He did not do so. He does not believe he ever talked to Officer Roberson about anything. He did not admit the whole thing to Officer Roberson. At age fourteen he was convicted in the juvenile court on a charge of larceny of some antiques.

The defendant's mother testified that she has never heard him admit taking the articles. She has heard him deny doing so and state that he had nothing to do with it.

His uncle, James Gray, testified that he was at the police station the night of the defendant's arrest and did not hear the defendant make a confession of any kind.

Police Officer Roberson then testified for the State in rebuttal as follows:

He assisted Deputy Beach in the investigation of this occurrence. On the night the defendant was arrested he had a conversation with him at the police station with reference to this matter.

Thereupon, the jury was sent out and on *voir dire*, in the absence of the jury, Officer Roberson testified that this conversation took place a few minutes before the defendant's preliminary hearing. Deputy Beach was present. The officers asked the defendant where he got the articles in question. Officer Roberson did not then

know whether or not the defendant had been warned by Deputy Beach concerning his rights or advised as to his right to counsel. He was not present when Deputy Beach had the conversation with the defendant at the residence of Mr. Weaver. At the time of Officer Roberson's conversation with the defendant at the police station, the stolen articles had been recovered. The defendant and Officer Roberson lived only four or five houses apart. The defendant has known Officer Roberson all of his life. The defendant was then eighteen years of age and Officer Roberson twenty-seven.

Upon this testimony the court found:

> "The Court finds that at the time he made a statement to Sgt. Roberson and Deputy Sheriff Beach the defendant had been advised of his rights to have counsel, advised that any statement he made might be used against him and that he understood his rights."

The jury then returned to the courtroom and, over the defendant's objection, Officer Roberson was permitted to testify, in the presence of the jury, that the defendant "stated that he and Van Gray had gone in Mr. Weaver's house and had taken this stuff out." At that time the various items were at the police station, the officers having recovered them. Van Gray was then present with the defendant, he having already admitted his part in the occurrence. Officer Roberson did not tell the defendant that he had a right to employ a lawyer, and he is not sure whether or not he told the defendant that anything he might say to the officer could be used against him.

*Attorney General Bruton and Assistant Attorney General Goodwyn for the State.*

*James R. Vosburgh and Leroy Scott for defendant appellant.*

LAKE, J. For at least one hundred forty years, long before the insertion of the Fourteenth Amendment into the Constitution of the United States, it has been the well settled law in this State that when one is on trial for an alleged criminal offense, a confession or admission by him may not be admitted in evidence, over his objection, unless it was made voluntarily and understandingly, not induced through use by the police of "the slightest emotions of hope or fear." It was so held in *State v. Roberts,* 12 N.C. 259. This Court has consistently followed and applied this basic principle since that decision in 1829 when it was recognized as already established by a "course of approved adjudications." *State v. Barnes,* 264 N.C. 517,

142 S.E. 2d 344; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777; *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619; *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232.

However, the mere fact that a confession was made while the defendant was in the custody of police officers, after his arrest by them upon the charge in question and before employment of counsel to represent him, does not, of itself, render it incompetent. *State v. Barnes, supra; State v. Crawford, supra; State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *State v. Thompson,* 224 N.C. 661, 32 S.E. 2d 24. The test of admissibility is whether the statement by the defendant was in fact made voluntarily. *State v. Rogers, supra; State v. Gosnell,* 208 N.C. 401, 181 S.E. 323; *State v. Livingston,* 202 N.C. 809, 164 S.E. 337. "Any circumstance indicating coercion or lack of voluntariness renders the admission incompetent." *State v. Guffey, supra.* The fact that the defendant was in custody when he made the statement is a circumstance to be considered. *State v. Guffey, supra.* The mental capacity of the defendant is also a circumstance to be considered. *State v. Whittemore,* 255 N.C. 583, 122 S.E. 2d 396. There may, of course, be coercion of the mind without physical torture or threat thereof. *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620.

Whether the defendant did or did not make the statement attributed to him is a question of fact to be determined by the jury from the evidence admitted in its presence. *State v. Guffey, supra.* Whether the statement, assuming it to have been made, was made voluntarily and understandingly, so as to permit evidence thereof to be given in the presence of the jury, is a question of fact to be determined by the trial judge in the absence of the jury upon the evidence presented to him in the jury's absence. *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847, *cert. den.,* 369 U.S. 807, 82 S. Ct. 652, 7 L. Ed. 2d 555.

When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. *State v. Barnes, supra; State v. Outing, supra; State v. Rogers, supra.* The trial judge should make findings of fact with reference to this question and incorporate those findings in the record. Such findings of fact, so made by the trial judge, are con-

clusive if they are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record. *State v. Barnes, supra; State v. Chamberlain, supra; State v. Outing, supra; State v. Rogers, supra.*

It is to be noted that this defendant, a college student at the time of his trial, did not testify before the judge, in the absence of the jury, with reference to the voluntariness of his alleged statements to the police officers. He testified, in the presence of the jury, that he did not make the statements at all, saying, "I have never admitted to anybody I broke in that place and took anything out of it." Thus, his own version of the matter is not that he was coerced or tricked into the making of a confession or that he made a confession due to his having no counsel to advise him or due to "the slightest emotions of hope or fear." His own testimony is that he did not make the statements which the police officers testified he did make. The jury apparently believed the officers and not the defendant, though there is evidence in the record to support the verdict without the alleged confession.

Notwithstanding the failure of the defendant, himself, to testify to an overpowering of his mind resulting in a confession of guilt, the seasonable objection by his counsel to the admission of the testimony of the officers concerning the alleged confession, and their exception to the ruling permitting the officers so to testify, bring us to the question of whether, as a matter of law, this testimony was incompetent.

Neither in his brief nor in oral argument before this Court does the defendant contend that the rulings of the trial court allowing the officers so to testify violated, in any respect, the long established law of this State as above summarized. We hold that in the admission of the testimony of the police officers concerning these alleged statements to them by the defendant, the trial judge complied meticulously with the law of this State and committed no error thereunder.

Nevertheless, "In passing on the admissibility of a confession, it is as much the duty of the State courts to protect the prisoner's rights under the Due Process Clause of the 14th Amendment to the Constitution of the United States as it is to protect his rights under our State Constitution." *State v. Barnes, supra.* In that inquiry, this Court is bound by the interpretation placed upon such provision of the Federal Constitution by the Supreme Court of the United States.

The defendant contends that the admission of the testimony of

the police officers with reference to the alleged statements by the defendant violated this provision of the Constitution of the United States, as interpreted by the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. He so contends on the ground that the record does not show, and the trial court did not find, that the officers told the defendant, prior to the alleged statements by him, that if the defendant was indigent a lawyer would be appointed to represent him if he so desired. The defendant's second trial, from which this present appeal is taken, commenced two days after the announcement of the decision in the *Miranda* case. That decision, therefore, controls our decision here, if it is otherwise applicable to the facts disclosed in the present record. *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

The trial court found as a fact that before the defendant made the statements in question, if he did make them, he was advised that he had a right to have and to confer with counsel; that any statement he made might be used against him; that he had a right to remain silent; and also found as a fact that if the defendant made the statements he made them freely, voluntarily and understandingly, without promise of reward, duress or other pressure. Each of these findings is amply supported by competent evidence in the record.

There is nothing in the record to suggest that this defendant was informed that if he was an indigent person he was entitled to have counsel appointed for him and to confer with such court appointed counsel before answering any question put by the officer, and the trial judge made no finding that the defendant was so advised. On the other hand, there is no evidence in the record and no contention in the record or before us in the defendant's brief, or in the argument of his able counsel, that the defendant was or is an indigent person unable, financially or otherwise, to employ counsel to advise and defend him. On the contrary, the record shows that the defendant was never confined in jail but was allowed bond and that such bond was posted by or for him shortly after his arrest. It also appears from the record that at his trial he was represented by not one but two experienced and capable counsel, admittedly privately employed to defend him. The record shows that the defendant was, at the time of his arrest in August, 1965, a high school graduate and that approximately a month thereafter he became a student at East Carolina College. There is nothing in the record to suggest that his college fees and expenses were paid otherwise than by himself or his relatives.

We are, therefore, brought to this question: Did the Supreme Court of the United States in the *Miranda* case hold that, as a matter of law, irrespective of a defendant's actual ability to employ counsel, no statement made by him to an officer, while in the custody of the officer and in response to a question by the officer, may be introduced in evidence against the defendant unless it affirmatively appears that the officer first told the defendant *that if he was an indigent person* counsel would be appointed to represent him?

We do not so interpret the decision in the *Miranda* case. It clearly appears from that opinion of the Supreme Court of the United States that the admissibility of evidence of a confession, made in response to police interrogation while the defendant is in custody, depends upon the sufficiency of the record to demonstrate "the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court "spelled out" procedural safeguards which must be employed "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it."

It is to be observed that in the present case the statements ascribed by the police officers to the defendant were not made while the defendant was in jail or in the presence of the police officers alone or after prolonged questioning. The record shows that they were first made, if at all, in a private home to which the defendant had voluntarily gone to discuss this matter with the owner of the property he is charged with having broken and entered and stolen. His statement to Deputy Beach was made, if it was made, there in the living room of that home in which room were the defendant, the man he had voluntarily gone to see, the defendant's cousin, who had accompanied him on that mission, and Deputy Beach. The statement was made, if it was made at all, within a few minutes after the officer arrived and informed the defendant that he was under arrest, and also informed him of the nature of the charge against him, of his right to remain silent, of the possible use against him of any statement he might make and of his right to confer with counsel before making any statement whatever. The defendant never requested the appointment of counsel. Officer Roberson, in whose presence the subsequent statements were made, if they were made, was no stranger to the defendant. Both are young men who then lived on the same street of a small town, only a few houses apart, and who had known each other for many years. There is no evidence whatever in this record that the defendant was coerced by or was in fear of either officer, or that either induced any statement by him through "the slightest emotions of hope or fear."

In the *Miranda* case the defendant was questioned "in a room

STATE *v.* GRAY.

in which he was cut off from the outside world." He was "in a police-dominated atmosphere." The Court said, "An understanding of the nature and setting of this in-custody interrogation is essential to our decisions today." The Court stressed the fact that "interrogation still takes place in privacy," and that police officers are frequently urged by police manuals to conduct their interrogations "alone with the person under interrogation," and to deprive the subject of "every psychological advantage," such as having "his family and other friends * * * nearby, their presence lending moral support." The police arrested *Miranda* and took him to a special interrogation room where they secured a confession. In the companion cases, decided in the same opinion, the defendants were detained and interrogated, night and day, for lengthy periods. "In each of the cases, the defendant was thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures." Of *Miranda,* the Court said, "The indigent Mexican defendant was a seriously disturbed individual with pronounced sexual fantasies." Stewart, one of the other defendants, was said to be "an indigent Los Angeles Negro who had dropped out of school in the sixth grade." Under these circumstances, the Court said, "This atmosphere carries its own badge of intimidation."

Thus, the *Miranda* case does not hold that the Fourteenth Amendment to the United States Constitution forbids the introduction in evidence of a confession made in custody if "adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings." The right to be protected by such procedural devices is the right of the defendant against self-incrimination through the use of confessions or admissions not "the product of his free choice." The facts of the present case distinguish it from the *Miranda* case and its companions, decided contemporaneously.

In its "spelling out" of its holding, the Court said in the *Miranda* case:

"[W]e cannot say that the Constitution necessarily requires adherence to any particular solution for the inherent compulsions of the interrogation process as it is presently conducted. * * * However, unless we are shown other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it, the following safeguards must be observed."

These safeguards were stated to be (1) advice in unequivocal terms that the prisoner has the right to remain silent; (2) the explanation that anything said can and will be used against him in court; (3) clear information to the prisoner that he has the right

to consult with a lawyer and to have the lawyer with him during interrogation; and (4) warning that "if he is indigent a lawyer will be appointed to represent him."

We do not understand the *Miranda* case to hold that a confession may not be admitted in evidence when shown to have been freely and voluntarily made by one who, in fact, is not an indigent, is not unable to obtain advice of counsel of his choice, and so is not entitled to have court appointed counsel, merely because he was not advised of a right which he would have had if, in fact, he had been an indigent.

We hold that the admission of this defendant's alleged statements to the officers does not violate his right under the Due Process Clause of the Fourteenth Amendment, as interpreted by the United States Supreme Court in the *Miranda* case, because there is nothing in the record to show, and it has not been contended by the defendant, either in the trial court or before us, that this defendant was an indigent entitled to have counsel appointed for him at the time of his arrest and conversations with the officers. It cannot violate this defendant's constitutional right against self-incrimination for the officers in their interrogation to fail to advise him of rights which some other person might have but which he does not have in view of his own circumstances.

There being nothing in this record to show that the statements alleged to have been made by the defendant were not voluntary, in fact, or that procedures adequate to safeguard his right against self-incrimination were not followed at his interrogation, his exceptions to the rulings allowing the officers to testify as to such statements are without merit and are overruled.

The remaining exceptions brought forward by the defendant in his brief are also without merit. His assignments of error 26, 27 and 28 relate to the sustaining by the court of the State's objections to questions directed by his counsel to his mother and uncle as to whether they heard the defendant admit "taking this stuff." The defendant's mother had testified, immediately prior to these questions:

> "Charlie Gray has never admitted to me that he took this stuff from anywhere. I was present with Deputy Sheriff Beach and Sheriff Roberson in the front of the police station or at the police station but there was no conversation I remember. I did not hear him and have never heard him any other time admit that he took these things. I have heard him deny he took them."

There was no error in refusing to permit questions designed solely to elicit repetition of this testimony. *In Re Smith's Will,* 163 N.C.

464, 79 S.E. 977. After the court sustained the objection to the question directed to the defendant's uncle, the uncle was permitted to testify, without objection:

> "I didn't hear him say anything in front of Jerry Beach. * * * I don't remember him saying anything particularly."

Any error which there may have been in sustaining the objection to this question, directed to the uncle, was cured by allowing the uncle immediately thereafter to so testify. *Baynes v. Harris,* 160 N.C. 307, 76 S.E. 230.

The only other exception brought forward in the defendant's brief relates to the above quoted passage from the charge of the court to the jury. In the passage in question, the court said:

> "[Y]ou may find him guilty as charged or you may find him not guilty of breaking and entering and guilty of larceny or you may find him guilty of larceny and not guilty of breaking and entering. They are separate offenses."

Obviously, this statement is a *lapsus linguae* since in it the court twice told the jury they could find the defendant not guilty of breaking and entering and guilty of larceny. However, it was not called to the attention of the court at the time, and we do not believe the jury could have misunderstood the intent of the court to say that it could find the defendant guilty or not guilty of either of the offenses.

In any event, this is not the basis of the defendant's exception to this portion of the charge. He contends that this statement of the court was error because the court did not instruct the jury that it could find the defendant not guilty of both offenses. The statement in question occurred near the beginning of the charge. In the last two paragraphs of the charge, the court dealt separately with the offense of breaking and entering and with the offense of larceny. He expressly told the jury, as to each count of the indictment, that if it had a reasonable doubt as to the defendant's guilt, it would be the duty of the jury to render a verdict of "not guilty" on that charge. The court instructed the jury fully and correctly as to the elements of each of the offenses with which the defendant was charged and as to the burden of proof. We find no prejudicial error in the charge to the jury. There can be no question but that the jury understood from this charge, considered as a whole, that it could acquit the defendant of either or both of these separate and distinct charges, and should so acquit him if they had a reasonable doubt as to his guilt. They found him guilty of both.

Rule 28 of the Rules of Practice in this Court provides: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." We have, nevertheless, examined the remaining assignments of error set forth in the defendant's statement of the case on appeal. We find no basis therein for disturbing the judgment rendered below, a conclusion in which the defendant's counsel apparently concurs since these assignments are not mentioned either in his original or in his supplemental brief in this Court.

The sentence imposed by the court below is well below the maximum permitted to be imposed for either of these offenses by the applicable statutes. G.S. 14-54, 14-70 and 14-72. If it be thought that the sentence imposed is unduly severe in view of the nature of the property taken and of the defendant's alleged offer to the owner to return it prior to his arrest, which question is not before us, the defendant may, if so advised, seek relief from the Board of Paroles or some other exercise of the powers of executive clemency.

No error.