## STATE OF NORTH CAROLINA v. SAM EDWARDS.

(Filed 22 November, 1967.)

**1. Criminal Law § 74—**

Testimony by a deputy sheriff as to statements made by the defendant, not amounting to a confession and exculpatory on their face, was not erroneously admitted into evidence, since there was uncontradicted evidence that defendant had been advised of his rights and had declined to consult a lawyer, although there may have been a possibility of prejudice in that the statements were at variance with the testimony of other witnesses for the State.

**2. Criminal Law § 114—**

A statement by the court, in reviewing the evidence in the charge to the jury, that "[i]t was elicited on cross examination that the defendant had been convicted of second degree murder, forgery, automobile larceny and one or more assaults", *held* not to constitute an expression of opinion.

APPEAL by defendant from *Clark, S.J.,* at the May Special Criminal Session of WAKE.

The defendant was indicted for common law robbery of Eddie Evans on 18 March 1967. He was found guilty as charged and sentenced to imprisonment in the State's Prison for a term of five to seven years.

The State introduced evidence tending to show that Eddie Evans, on 18 March 1967, sold and delivered some hogs to a man in Clayton, who paid him $90 in the presence of the defendant. The defendant was assisting Evans in the loading and delivery of the hogs. Evans already had approximately $100 in his pocket. Evans, the defendant and one Burt Wiggins got into the defendant's automobile and started toward Garner from Clayton. The defendant turned off onto a dirt road and told Evans to give him his billfold, which Evans refused to do. The defendant then jumped out of the automobile, picked up a piece of iron, two feet long, grabbed Evans by the collar, reached into his pocket and took his billfold, then containing $191 or $192. Thereupon, Evans was frightened and ran home through the woods and called the police. When the officers came, Evans had been drinking but told them the same story which he related upon the witness stand.

The defendant testified in his own behalf, denying his guilt. He also called as his witness Herman Ross, who testified that on 5 April 1967, while he was confined in the county jail, Evans was also confined therein and requested Ross to write for Evans' signature a note retracting the accusation against the defendant, which Ross wrote and Evans signed. This document was put in evidence. On cross examination, Ross testified that, shortly after writing this note, he

was convicted of forgery, but the charge against him had no relation to the present matter. He denied that he had forged the alleged note from Evans.

Evans, called by the State in rebuttal, denied signing the note to which the testimony of Ross related and, while upon the witness stand, wrote his name upon a piece of paper which was thereupon introduced in evidence.

The State also called in rebuttal Burt Wiggins, who testified that he was present at the alleged robbery and saw the defendant take the billfold from Evans. Wiggins also testified that prior to this action the defendant had not been drinking.

The State thereupon called as its witness the deputy sheriff who investigated this matter and arrested the defendant. Upon *voir dire* examination, in the absence of the jury, the deputy testified that he offered the defendant the use of a telephone to call a lawyer and advised the defendant of his right to remain silent, that anything he said could and would be used against him in court, that he had the right to talk to a lawyer and have an attorney present while he was being questioned, and that if he could not afford to hire a lawyer, one would be appointed to represent him before any questions were asked, whereupon the defendant replied that he understood those rights, that he wanted to talk to the officer and did not want an attorney. The defendant offered no evidence on these matters. The court found that the defendant had been fully advised of his constitutional rights by the deputy, that he understood them, and that his statement to the officer was voluntary, knowingly and intelligently made.

The jury then returned to the courtroom and the deputy sheriff testified, in the presence of the jury, over the defendant's objection, that the defendant "said he had nothing to hide and didn't mind talking" to the officers, that after getting off work on the day in question, about noon, he went to certain business establishments and transacted certain personal business and then went home, saying nothing about being with Evans or Wiggins on the day in question and "denied the whole thing."

Upon cross examination of the defendant, he testified that he had been convicted previously of second degree murder, larceny of his own automobile, forgery, and assault upon his wife. In reviewing the evidence in his charge to the jury, the court stated, "It was elicited on cross examination that the defendant had been convicted of second degree murder, forgery, automobile larceny and one or more assaults." To this the defendant excepts.

The only assignments of error are that the court erred in finding that the defendant was fully advised of his constitutional rights by

the arresting officer and that his statements to the officer were voluntary; that the court erred in admitting into evidence the statements by the defendant to the deputy sheriff and erred in the foregoing statement in the charge, the defendant contending that this amounted to an expression of an opinion by the court.

*T. W. Bruton, Attorney General, Andrew McDaniel, Assistant Attorney General, and William F. Briley, Trial Attorney, for the State.*

*Liles & Merriman for defendant appellant.*

PER CURIAM. The deputy sheriff did not testify to any confession by the defendant. On the contrary, he testified that the defendant, in his statement to the officer, denied the charge. However, the statements of the defendant, as to which the officer was permitted to testify, concerning the defendant's whereabouts on the afternoon of the alleged robbery, though on their face exculpatory, may have been prejudicial in the eyes of the jury since the defendant did not inform the officer that he had been with Evans or Wiggins on the day in question. In any event, there was uncontradicted testimony on the *voir dire* examination that, before the defendant made any statement, he was fully advised of his rights under the rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and, thereupon, the defendant stated that he did not want a lawyer. The defendant's own testimony shows that he was not unacquainted with the judicial proceedings in criminal matters. There was ample evidence to support the finding of the trial judge that the statements by the defendant to the deputy sheriff were voluntary and there was no error in permitting the deputy sheriff to testify as to such statements. See *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1.

The defendant's contention that the court expressed an opinion in the statement in the charge that it was "elicited" on cross examination that the defendant had been convicted previously of other offenses is without substance.

No error.