STATE OF NORTH CAROLINA v. CHARLES LEWIS HASKINS, JR.

No. 84

(Filed 29 January 1971)

1. Criminal Law § 66— identification testimony — necessity for voir dire — failure of defendant to object

Defendant, without at least a general objection, was not entitled to a *voir dire* hearing on the admissibility of identification testimony by the prosecuting witness.

2. Constitutional Law § 30; Criminal Law § 66— identification testimony — pretrial confrontation in courtroom — unnecessary suggestiveness — independent origin

In this armed robbery prosecution, confrontation in the courtroom before the trial commenced was not so "unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process, and the State's evidence clearly showed that the in-court

State v. Haskins

identification of defendant by the prosecuting witness was of independent origin.

### 3. Criminal Law § 76— in-custody statements — necessity for voir dire

When defendant's counsel requested a *voir dire* hearing as to the admissibility of in-custody statements allegedly made by defendant, the trial judge properly held a *voir dire* hearing in the jury's absence to determine whether the statements were in fact voluntarily and understandingly made.

### 4. Criminal Law § 76— admissibility of in-custody statements — sufficiency of evidence and findings

The findings of fact by the trial judge upon the *voir dire* as to the voluntariness of defendant's in-custody statements are supported by competent evidence and are, therefore, binding upon the appellate court, and the findings in turn support the court's conclusion of law that defendant's statements were "freely, understandingly and voluntarily made."

### 5. Criminal Law § 75— form of Miranda warnings

Words which convey the substance of the *Miranda* warnings along with the required information are sufficient to meet the requirements of that decision, there being no set form that must be followed in every case.

### 6. Criminal Law § 75— sufficiency of pre-interrogation warnings

Warnings given to defendant prior to his in-custody interrogation, which included statement that "it is our duty as police officers to get you a lawyer," sufficiently conveyed to defendant the information that he had a right to consult a lawyer and have the lawyer with him during questioning, and if defendant was indigent that a lawyer would be appointed to represent him.

### 7. Criminal Law § 75— whether confession was made — jury question

Whether defendant did or did not make the inculpatory in-custody statements attributed to him is a question of fact to be determined by the jury.

### 8. Criminal Law § 76— confession — influence of drugs — failure to make specific findings

Where defendant contended that he did not remember making any in-custody statement because he was under the influence of drugs, finding by the trial court that defendant knowingly, intelligently and understandingly waived his constitutional rights and intelligently waived the right to counsel implicitly carries the finding that his understanding and intelligence were not so adversely affected as to make him unconscious of the meaning of his words; consequently, failure of the trial court to make specific findings as to whether defendant was under the influence of drugs was not error, although the better procedure would have been for the trial court to have made such findings.

**9. Criminal Law §§ 76, 169— confession — influence of drugs — failure to make specific findings — harmless error**

The record reveals that the State has shown beyond a reasonable doubt that failure of the trial court to make specific findings as to whether defendant was under the influence of drugs when he made in-custody statements, if error, did not contribute to the verdict and was not prejudicial to defendant.

APPEAL by defendant from *Brewer, J.,* 13 July 1970 Special Criminal Session of CUMBERLAND Superior Court.

Defendant was charged in a bill of indictment with the armed robbery of James Evans, Jr. Defendant, through counsel Sol G. Cherry, Public Defender, entered a plea of not guilty. The jury returned a verdict of guilty as charged. Defendant appealed from judgment sentencing him to a term of not less than ten years nor more than fifteen years in North Carolina Department of Correction. The case is before this Court pursuant to its general referral order effective 1 August 1970.

*Attorney General Morgan and Assistant Attorney General Hafer for the State.*

*Sol G. Cherry, Public Defender for defendant.*

BRANCH, Justice.

Defendant assigns as error the failure of the trial judge to suppress the evidence of identification by the witness James Evans, Jr.

The State offered evidence of James Evans, Jr., which tended to show that on the night of 21 March 1970 he was employed as a service station attendant at a station located on Murchison Road in Fayetteville, North Carolina. He was working alone, and at about 9:30 p.m. he noticed defendant standing on the edge of the road about 30 feet from him. The telephone located at the refreshment stand on the premises rang while he was waiting on a customer. Evans testified that defendant, Charles Haskins (calling him by name) came off the street and said he would answer the telephone. Evans testified:

"I see Charles Haskins in the courtroom today (at which point he pointed to defendant). Charles Haskins pecked at the window and I opened the door. He asked if the cigarette machine was working and I turned around to give him change. He then told me to give him all the money I

had in my pocket. I had my back turned to him when he told me that. I told him that he must be joking but at that time he poked me in the ribs and I turned around and saw this pistol he had in his hand. After I saw the pistol, I gave him the money I had in my pocket. I did not know how much I had in my pocket until the man had checked the pumps and counted the money and found out how much. The amount was Sixty-one Dollars."

Evans further testified that he had met defendant in October 1968, when he was introduced to him by his nickname "Chuck" rather than Charles Haskins. He talked to police officers after the incident. Defendant's counsel did not object to any of the direct testimony of Evans.

On Cross-examination Evans testified that when he met defendant in 1968 he was in defendant's presence for about five minutes and that he had not seen him again until 21 March 1970. He did not identify defendant at any pretrial "line-up." The first time he saw defendant after 21 March 1970 was in the District Court, when defendant was at the counsel table with his attorney. Defendant was the only Negro male at the table, and when the case was called for trial, Evans identified defendant as the man who committed the robbery.

When defendant's counsel completed his cross-examination, he, for the first time, moved to suppress the evidence of identification. The motion was denied and defendant excepted. Defendant made no motion to hold a *voir dire* or to qualify the witness. Evans, on redirect examination, testified that the lights were on and he could see the face of the man who robbed him.

There was other evidence indicating that Evans gave the police officers a detailed description of defendant and that as a result of the conversation with Evans defendant was arrested two days later.

[1] Defendant, without at least a general objection, was not entitled to a *voir dire* hearing on the question of his identification. *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534; *State v. Accor*, 277 N.C. 65, 175 S.E. 2d 583. Defendant's counsel did not request a *voir dire* or further opportunity to "qualify" the witness when he made his motion to suppress the evidence on identification. It is apparent that all of the evidence on this question was before the jury, and it would have been a vain act for the

judge to have dismissed the jury for the purpose of then conducting a *voir dire* hearing.

Defendant was represented by counsel at the preliminary hearing, and in Superior Court, and we therefore are not concerned with defendant's Sixth Amendment guarantee of counsel at a pretrial "line-up" or confrontation.

[2] The question here presented is whether the confrontation in the courtroom before the trial commenced was so "unnecessarily suggestive and conducive to irreparable mistaken identification" as to deprive defendant of due process under the Fourteenth Amendment. In deciding this question we will look to the "totality of the circumstances." *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S.Ct. 1967; *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S.Ct. 967.

In the case of *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593, the victim of a robbery went to the county jail to report the crime to the sheriff. He described defendants and the automobile they were using. Defendants were arrested and brought to the county jail within about four hours, and the victim, who had remained at the jail of his own volition, promptly identified defendants when they entered the county jail in the custody of police officers. Defendants and the automobile used by them fitted the description previously given by the victim to police officers, and his wallet was found in the automobile occupied by defendants. This Court held that the trial court properly allowed the victim of the robbery to make an in-court identification notwithstanding the fact that defendants were without counsel at the out-of-court confrontation. The Court stated that defendants were not shown "singly" for identification purposes and that the principles set forth in *Stovall v. Denno, supra,* were not available to defendants.

*United States v. Davis,* 407 F. 2d 846 (1969), is a case in which defendant was charged with kidnapping. The victim had only a fleeting glance of his assailant and had failed to recognize him in photographs. The victim made his first identification at a preliminary hearing. The Fourth Circuit Court of Appeals rejected defendant's contention that he had been denied due process, and stated:

". . . There is no indication that this occasion was used by the government to provide the setting for an unfair con-

frontation or that it had this effect. The hearing was conducted before a United States Commissioner. Davis was not handcuffed, and no attempt was made to single him out before the victim recognized him. Davis was represented by counsel who made no objection about the conduct of the hearing or the manner of identification.

". . . There is no suggestion that the opportunity for the victim to observe Davis was prearranged. On the contrary, it was simply inadvertent. Cf. *United States v. Marson,* 408 F. 2d 644 (4th Cir. 1968).

"Due process does not require that every pretrial identification of a witness must be conducted under laboratory conditions of an approved lineup. *United States v. Quarles,* 387 F. 2d 551, 556 (4th Cir. 1967). Here the victim's opportunities to see Davis were simply those that are likely to occur at various stages of all criminal proceedings. Nor were the confrontations 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that Davis was denied due process of law. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L. Ed. 2d 1199 (1967). We conclude, therefore, that the district judge did not err in admitting the victim's in-court identification."

See also *United States v. Schartner,* 426 F. 2d 470.

In instant case the witness Evans had known defendant before the night of the robbery, and on the night of the robbery had ample opportunity to observe defendant in a lighted area. He furnished police with a detailed description of the person who robbed him, and defendant was thereafter arrested on 23 March 1970. Defendant's presence in court with his counsel does not support an inference that there was any planned "suggestiveness" on the part of the police officers. Defendant had counsel at the preliminary hearing and at the trial in Superior Court. The record shows no objection to the proceedings or the manner of identification at the preliminary hearing. He had every opportunity to explore and expose any circumstance that might have tainted the in-court identification.

We think the State's evidence clearly shows that the in-court identification was of independent origin, and under the totality of the circumstances of this case we do not think that

defendant was deprived of "due process." This assignment of error is overruled.

[4]  Defendant's only other assignment of error is that the trial court committed error by admitting inculpatory statements allegedly made by him.

When Police Officer Charles House was testifying for the State he said that he had talked with defendant. Upon motion of defendant's counsel, the trial judge conducted a *voir dire* hearing to determine the voluntariness of the alleged statements. On *voir dire* Officer House testified:

> "I advised him of his constitutional rights after which he did make a statement to me. . . . I explained to him that that meant that he had a right to have legal counsel and a legal counsel was an attorney or a lawyer at the time that he was being questioned if he so desired. I told him that if he did not have the proper funds to hire an attorney or a lawyer it was 'our duty as police officers to get an attorney for him.'

> "I advised him that any statement he made could be held against him in a court of law, that he had a right, if he so desired, while he was answering questions, if he did not want to answer any questions he could answer some questions and if some questions were asked that he did not want to answer, he did not have to answer those questions, that he had a right to quit answering at any time he so desired. He said he didn't need a lawyer; that he fully understood his rights and that he would talk about the robbery of the Service Distributing Company. . . .

> ". . . He was seated just across the desk. At the time I advised him of his constitutional rights he paid attention. I could not detect any influence of alcohol, drugs or other medicine. He had been in my custody at 9:23. When he had been advised he probably had been in my custody one hour."

Defendant then testified on *voir dire* that he saw Officer House and another police officer at about 9:30 on 22 March 1970 at 2420 Murchison Road in Fayetteville. He said that on that occasion he heard a knock on the door, and one of the officers told him to open the door. He told the officers that since the door was jammed, it would be necessary for them to go to the back.

They went to the back and asked him his name. He told them his name was "Chuck" and the officers immediately arrested him for armed robbery. Defendant stated: "I asked him what particular armed robbery he was talking about and he told me that I had robbed the Service Distributing Company. I told him that he was out of his mind. He took me to the police station and asked if I wanted to talk about it. I said 'Talk about what?' He said 'Talk about the robbery.' I told him 'I didn't rob nobody, why should I want to rob a place where I used to work, that would be a fool thing, people sure know you?'" Defendant further testified that when they went to the police station Mr. House read off a form, and he remembered Mr. House saying that he had a right to legal counsel before he answered questions, but that he did not recall making any statement. He said he was under the influence of "two bags of heroin which I had taken an hour and a half before the officers came to the house," and that the heroin made him drowsy and 'paranoid.' Defendant also testified that he had completed two and one-half years study at Princeton University.

At the close of the *voir dire* hearing the trial judge, in part, found:

"The court finds from the testimony that Officer Charles B. House warned the defendant that he had a right to remain silent, that anything he said could be used against him in a court of law, that he had a right to have an attorney if he did not have the funds to get an attorney for him, he advised the defendant it was his duty to get that attorney for him prior to any questioning . . . that the defendant stated . . . that he didn't need a lawyer and understood his rights and would talk about the robbery at the Service Distributing Company; . . . That opportunity to exercise the constitutional rights of the defendant were accorded to the defendant throughout the interrogation; that the defendant requested no attorney and did not refuse to make a statement to Officer C. B. House; and by doing so, knowingly, intelligently and understandingly waived any constitutional rights accorded to the defendant and intelligently waived the right to have counsel present with him at the time of making a statement to Officer C. B. House."

The Court thereupon concluded:

". . . [T]hat the defendant freely, understandingly and voluntarily made a statement to Officer C. B. House without undue influence, coercion or duress and without promise of any kind and waived his right to have counsel present with him at the time of interrogation and making of statement to C. B. House. Therefore, it is adjudged that the defendant's answers and statement to Officer C. B. House are competent evidence and that the officer will be permitted to testify accordingly. . . ."

When the jury returned, Officer House testified that defendant told him he borrowed a 22 caliber pistol from Frank Pierce Allen and robbed the station, carried the pistol back to Allen after the robbery, and left $29 with Allen. He spent the rest of the money. The officer further testified that he went to see Frank Pierce Allen at 2420 Murchison Road and picked up the 22 caliber pistol and $29 in cash.

[3, 4] When defendant's counsel requested a *voir dire* hearing as to the admissibility of statements allegedly made by defendant, the trial judge properly held a *voir dire* hearing in the jury's absence to determine whether the statement was in fact voluntarily and understandingly made. *State v. Conyers*, 267 N.C. 618, 148 S.E. 2d 569; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1. Both the State and defendant offered evidence on *voir dire*, and at the conclusion of the hearing the trial judge made findings of fact and concluded that defendant's statements were "freely, understandingly and voluntarily made." There was ample competent evidence to support the findings of fact, and these findings are therefore binding on this Court. *State v. Wright*, 275 N.C. 242, 166 S.E. 2d 681; *State v. Gray, supra*. The findings of fact in turn support the conclusions of law.

Defendant relies on the familiar case of *Miranda v. Arizona*, 384 U.S. 436, and the case of *State v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620. We concede that the principles cited in these cases are authoritative; however, both cases are factually distinguishable from instant case.

In *Miranda* the defendant was an uneducated, seriously disturbed Mexican boy with pronounced sexual fantasies, who made a confession after being interrogated by two police officers for two hours. It was admitted that Miranda was not advised that he had a right to have an attorney present.

**[6]**  Defendant contends that the language used by the police officer in advising him of his constitutional rights did not convey to defendant the information that he had a right to have counsel present during his interrogation. He points specifically to the language "It is our duty as police officers to get you a lawyer."

**[5]**  The decision in *Miranda* does not set out a form which must be followed in every case. *State v. Gray, supra.* Words which convey the substance of the warning along with the required information are sufficient. *United States v. Lamia,* 427 F. 2d 373; *Oritz v. State,* 212 So. 2d 57 (Fla.).

**[6]**  The warnings given by the police officers in instant case conveyed the meaning that defendant had a right to consult a lawyer and have the lawyer with him during questioning and, if defendant was indigent, that a lawyer would be appointed to represent him.

In the case of *State v. Chamberlain, supra,* the court rejected the confession evidence obtained after five days of lengthy daily questioning. The defendant was a soldier, far from home, who was without counsel. He was not advised of any of his constitutional rights. There was also evidence that defendant was told by a deputy sheriff that he might be further charged with kidnapping, and if he would cooperate and sign a confession that he participated in two armed robberies, that they would drop the kidnapping charge.

Here, there is ample evidence that the officers fully complied with the procedural safeguards required by *Miranda.* There is no evidence of threat, promise or coercion of any kind which might have tended to "overbear" defendant's will.

**[7, 8]**  Defendant contends he did not make an inculpatory statement to the officers. Whether defendant did or did not make the statement attributed to him is a question of fact to be determined by the jury. *State v. Gray, supra.* He also contends that he did not remember making a statement because he was under the influence of drugs. In this connection, it is noted that the trial judge made no specific findings as to drugs or their effect on defendant at the time he allegedly made the inculpatory statement. It would have been the better procedure for the trial judge specifically to have found facts concerning the effect, if any, of drugs on defendant's mental or physical condition at the time he

State v. Haskins

allegedly made statements to the officers. However, under the particular facts of this case, the Judge's finding that "opportunity to exercise the constitutional rights of the defendant were accorded to the defendant throughout the interrogation; that the defendant requested no attorney and did not refuse to make a statement to Officer C. B. House; and by doing so, knowingly, intelligently and understandingly waived any constitutional rights accorded to defendant and intelligently waived the right to have counsel present with him at the time of making a statement to Officer House," implicitly carries the finding that his understanding and intelligence were not so adversely affected as to make him unconscious of the meaning of his words.

Even had we considered this omission erroneous, we think the record clearly shows that no prejudicial error would have resulted. Officer House, who had been in defendant's presence for about an hour before the alleged statement was made, unequivocally testified that in his opinion defendant was not under the influence of drugs. Even more convincing is defendant's own testimony which shows verbal exchanges with the officers and actions indicating full possession of his faculties and a keen understanding of his predicament.

[9] This record reveals that the State has shown beyond a reasonable doubt that such omission did not contribute to the verdict obtained. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824.

For the reasons stated, this assignment of error is overruled.

In the trial of the case below we find

No error.