## STATE v. THOMAS INMAN.

(Filed 20 January, 1967.)

**1. Criminal Law § 71—**

    A statement voluntarily made by defendant to an officer prior to any custodial or even interrogatory relationship between them is competent.

**2. Same—**

Evidence that prior to the making of a statement while in custody, defendant was advised of his right to remain silent, that any statement he made might be used as evidence against him, that he was entitled to have an attorney, and that if he could not employ an attorney an attorney would be appointed for him, and that no promises or threats were made to induce the making of the statement, *held* to support the court's finding that the statement was voluntarily and understandingly made.

APPEAL by defendant from *Farthing, J.,* July 1966 Regular Criminal Session of HAYWOOD.

Defendant was indicted on a charge of first degree murder. Upon the trial of the cause the Solicitor announced that the State would not seek a conviction for murder in the first degree, but for second degree murder or manslaughter, as the evidence under the law might warrant.

The State's evidence tends to show that the deceased, Cecil Pressley, together with Gayno Morgan, Bill Blankenship and Paul Blankenship, came to defendant's home on 24 February 1966. Gayno Morgan testified, in substance, that while he was in defendant's kitchen he heard a scuffle and a shot fired in the front room. He then went into the front room and found the deceased on his back on the floor and the defendant sitting on the couch pointing a rifle in the direction of deceased. Morgan slapped deceased on the face and said, "Get up, Curley, get up." There was no response. Defendant pointed the gun at Morgan, who fled. The witness Paul Blankenship testified to substantially the same facts.

On 28 February 1966 the defendant's house burned, and while an attempt was being made to put out the fire, the body of deceased was found. The State offered evidence showing that deceased died as a result of gunshot wounds and not as a result of the fire, and further, that in the opinion of the State's expert witness the deceased had been dead for more than twenty-four hours before the fire started.

Defendant was arrested around 4:00 P.M. on 1 March 1966, and brought to Haywood County jail. He was in an intoxicated condition at that time. Around 2:00 A.M. on 2 March 1966, defendant was brought into the kitchen of the jail, where he was questioned by four law enforcement officers, one of whom was Claude Davis, Special Agent with the State Bureau of Investigation. Davis was the first witness offered by the State who testified as to statements made by the defendant. Upon defendant's objection, the jury was excused from the courtroom, and in its absence the court heard evidence both from the State and from the defendant on the question of the voluntariness of the statements. In the absence of the jury, Davis testified that he informed the defendant at the time of the

interrogation that he did not have to make any statement whatsoever, and that any statement he did make could be used as evidence in court against him; that he could remain silent and refuse and decline to answer any questions or make any statement; that he was entitled to remain silent and refuse to answer any question or make any statements until he had an attorney represent him; that he did not have to answer any questions or make any statements in the absence of an attorney employed or appointed to represent him; that if he did not employ an attorney to represent him and if no one else employed an attorney to represent him, that an attorney would be appointed, and he could refuse to answer any question or make any statements until an attorney was present; that no promise would be made him whether he did or did not make a statement; that he would not be harmed or threatened or mistreated in any way. The defendant testified and contended that he thought the word "attorney" referred to Mr. Brown, who was the District Solicitor. It was shown by cross-examination that defendant had been in both State and Federal courts on several occasions since 1936, and had been represented by both privately retained and court-appointed attorneys.

At the conclusion of the *voir dire* examinations, the court found as follows: "Let the record show that the court finds as a fact that the statements made by the defendant were made freely, voluntarily and understandingly after he had been fully advised of his constitutional rights not to make any statements, and right to have an attorney present." The jury then returned to the courtroom and the witness Davis stated that the defendant told him that on the night of February 28, 1966 the deceased came to his home about 9:00 or 10:00 o'clock and that deceased had waded the creek and had wet feet and was drunk. He and Pressley ate some peaches and Pressley went into the back room of the house and defendant then went to bed in another room. About midnight he was awakened by fire and smoke and left the house on his hands and knees, and did not have time to call Pressley. He went to his sister's house and asked her to notify the fire department and sheriff.

Defendant also excepted to the admission of evidence of similar statements made by him to the sheriff of Haywood County at the scene of the fire. On *voir dire*, in the absence of the jury, the Sheriff testified that he had no idea at the time statements were made to him that deceased died of any cause other than the fire, and that he did not make any inquiry concerning the cause of deceased's death, but that the statements were voluntarily made, without any questions from him. The Sheriff told the defendant that he had better go up to his sister's where it was warm. At the close of the

*voir dire,* the judge found that these statements were voluntarily made, with full understanding of his constitutional rights, and the statements were admitted in evidence before the jury.

The State also offered the testimony of Charles Messer, who was a deputy sheriff of Haywood County on March 1, 1966. He testified that the defendant made a statement to him between 8:30 and 9:00 o'clock on the evening of March 1, 1966, and upon objection by the defendant, *voir dire* was again held in the absence of the jury and witness Messer testified that he brought the defendant from his cell and talked with him in the presence of Dr. Brown, and before any conversation he advised the defendant that he was entitled to a lawyer to be present when they were talking to him, that the defendant did not have to tell them anything, and that what he might tell them could be used against him in court or for him, and that he didn't have to make any statement at any time to them; that he made no threats or promises of reward, and that thereupon the defendant told him that he did not want a lawyer because he had not done anything. After cross-examination of this witness by the defendant's attorney, the court found that the statement made to witness Messer was made after defendant had been advised of his constitutional rights, and was made freely, voluntarily and understandingly. Thereupon, the witness Messer testified to statements substantially the same as were testified to by S.B.I. Agent Davis and the Sheriff of Haywood County.

At the close of all the evidence, the jury returned a verdict of guilty of manslaughter, judgment was entered thereon, from which the defendant appeals.

*Attorney General Bruton and Assistant Attorney General Goodwyn for the State.*

*Ferguson & Haire for defendant.*

PER CURIAM. The sole question presented for decision is: Did the trial court err in holding that defendant had been fully apprised of his constitutional rights and that his statements to officers were made voluntarily and with understanding?

The case of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, relates to cases tried after 13 June 1966. The trial of this case commenced at the July Session 1966 of Haywood Superior Court. The *Miranda* case spelled out certain "safeguards" to be used in the interrogatory process. "These safeguards were stated to be (1) advice in unequivocal terms that the prisoner has the right to remain silent; (2) the explanation that anything said can and will be used against him in court; (3) clear information to the prisoner that he

STATE *v.* INMAN.

has the right to consult with a lawyer and to have the lawyer with him during interrogation; and (4) warning that 'if he is indigent a lawyer will be appointed to represent him.'" *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1.

The procedure to be followed by the trial judge in determining whether evidence of defendant's statements should be given in the presence of the jury is clearly set out in *State v. Gray, supra,* where Lake, J., speaking for the Court, said:

> "When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. *State v. Barnes, supra* (264 N.C. 517, 142 S.E. 2d 344); *State v. Outing, supra* (255 N.C. 468, 121 S.E. 2d 847); *State v. Rogers, supra* (233 N.C. 390, 64 S.E. 2d 572). The trial judge should make findings of fact with reference to this question and incorporate those findings in the record. Such findings of fact, so made by the trial judge, are conclusive if they are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record."

The defendant first made the statements complained of to the Sheriff of Haywood County when no custodial or even interrogatory relationship existed. Other statements were made while in custody "after adequate protective devices were employed to dispel the compulsion inherent in custodial surroundings." *Miranda v. Arizona, supra.*

There is plenary competent evidence in this record to support the trial judge's findings of fact that defendant made the statements voluntarily and with understanding.

No error.