STATE v. BILLIE CLEM McRAE

No. 27

(Filed 11 February 1970)

**1. Criminal Law § 75— admissibility of a confession**

An extra-judicial confession of guilt by a defendant is admissible against him only when it is made voluntarily and understandingly.

**2. Criminal Law § 75— admissibility of confession — right to counsel — privilege against self-incrimination — waiver — unfamiliarity with rules of law**

In this prosecution for first degree murder and armed robbery, defendant's contention that he did not voluntarily, understandingly and intelligently make incriminating statements or intelligently waive his right to counsel while in police custody because he was unaware of the rule of law which could make him guilty of first degree murder even though he did not actually commit the act which ended deceased's life is without merit, since a defendant need not be familiar with the rules of law in order to intelligently waive his right to counsel and his privilege against self-incrimination.

**3. Criminal Law § 75— admissibility of confession**

The trial court properly admitted into evidence incriminating statements made by defendant while in police custody, where the court found upon competent evidence on *voir dire* that defendant's statements were made freely, knowingly and understandingly after he had been fully advised of his constitutional rights and after he had freely, knowingly, understandingly and voluntarily waived the same.

**4. Criminal Law § 76— admissibility of a confession — findings of fact — appellate review**

When the trial judge's findings as to the voluntariness of a confession are based on competent evidence in the record, they are conclusive, and the reviewing court cannot properly set aside or modify such findings.

**5. Criminal Law § 75; Constitutional Law §§ 32, 37— capital offense — waiver of counsel during interrogation**

A defendant charged with a capital offense may waive his right to counsel during an in-custody interrogation.

APPEAL by defendant from *Thornburg, S.J.,* 21 July 1969 Criminal Session of RICHMOND Superior Court.

Defendant was tried upon bills of indictment charging him with first degree murder and robbery with firearms. The jury returned verdicts of guilty of murder in the first degree with recommendation that his punishment be imprisonment for life in the State's Prison, and guilty of robbery with firearms. Defendant appealed from judgments entered on the verdicts. This appeal was docketed and argued in the Supreme Court as Case No. 58 at the Fall Term 1969.

The State offered evidence which tended to show that on 12 November 1968 the body of Braxton Crawford Quick was found lying on the floor of a truck which was parked on a rural road five miles north of Hamlet, North Carolina. His pants were torn at the pockets, and his money belt, containing only two checks, was lying on top of his body. The body was removed to a hospital, where the coroner of Richmond County found a wound in the left side of decedent's chest, caused by a .22 bullet which, in the coroner's opinion, caused Quick's death.

State's witness Nathaniel Allred, alias Bernard Brown, testified, in substance, that he was with defendant on 12 November 1968; that after defendant had a conversation with Quick, the witness, defendant and Eddie McRae followed a truck operated by Quick on a rural road until Eddie McRae blew the horn of the automobile which he was operating and the truck stopped. Defendant went to the truck alone, and after about four minutes the witness walked to the truck and found Quick lying on his back and defendant in the act of driv-

ing the truck away. Defendant had a .22 pistol. Upon defendant's order, Allred removed money from Quick's body and gave it to defendant. The witness never saw Quick move. Defendant and Allred returned to the car and Eddie McRae drove them from the scene. Defendant gave Allred $50 of the money taken from Quick's body.

SBI Agent Everette L. Norton, Jr., testified that on 14, 15 and 18 November 1968 he had conversations with defendant while he was in custody. At this point the record shows:

> (Motion by Mr. Sharpe, for the defendant that the statement, State's Exhibit "4" not be admissible into evidence. Motion heard while jury was not present.)

The court thereupon conducted a voir dire examination in the absence of the jury and thereafter admitted into evidence before the jury a written statement (Exhibit "4") allegedly signed by defendant, and also allowed SBI Agent Norton to testify before the jury as to custodial statements made to him by defendant.

Defendant offered evidence of his good character and offered Bobbie J. McRae, who testified that he went to Washington with officers to identify Thaddus Nathaniel Allred and that Allred stated that he "was going to get me." Defendant did not testify before the jury.

*Attorney General Morgan and Dale Shepherd, Staff Attorney, for the State.*

*Benny S. Sharpe for defendant.*

BRANCH, J.

Defendant contends that the trial judge erred by admitting into evidence inculpatory statements alleged to have been made by him to police officers while in police custody.

[1]   When defendant interposed his objection to evidence concerning custodial statements made by him to police officers, the trial judge, in accordance with procedure approved by this Court and the United States Supreme Court, excused the jury and in its absence conducted a voir dire hearing to determine the voluntariness of the alleged statements. *Jackson v. Denno,* 378 U.S. 368, 12 L. ed. 2d 908, 84 S. Ct. 1774; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Catrett* (No. 52, Fall Term, 1969, filed January 6, 1970). This procedure is vital because of the unquestioned rule in North Carolina that an extra-judicial confession of guilt by a defendant is admissible against him only when it is made voluntarily and under-

standingly. *State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481; *State v. Gray, supra; State v. Roberts,* 12 N.C. 259.

On voir dire, Everette L. Norton, an agent of the State Bureau of Investigation, and defendant Billie Clem McRae testified. Agent Norton, in substance, testified that he talked with defendant while he was in custody on a charge of first degree murder; that at the times he talked with defendant he appeared to be in a normal, rational condition; that defendant was in no way coerced or offered any reward to make a statement; he was warned verbally and in writing of his "constitutional rights," and, prior to making the statement, he stated orally and in writing that he understood his rights. The written document signed by defendant consisted of two parts, entitled "Your Rights" and "Waiver of Rights," respectively. Under the section entitled "Your Rights" appears the following:

"Before we ask you any questions you must understand your rights. You have the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before any questioning if you wish. If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You also will have the right to stop answering at any time until you talk to a lawyer."

The section entitled "Waiver of Rights" states:

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

According to Agent Norton, defendant signed said waiver before any questioning took place and it was witnessed by the Deputy Clerk of the Superior Court.

On cross-examination, Agent Norton indicated that he had not discussed with defendant the charges against him before the incriminating statement was made, but that Chief Deputy Earl Dunn (of the Richmond County Sheriff's Office) had explained the charges to defendant sometime prior to defendant's signing the waiver and making the statement in question.

Defendant testified, in substance, that he was arrested on the

morning of 14 November 1968. He stated that the warrant (charging him with murder) was read to him, but that he did not understand the charge of murder against him and that no one explained the doctrine of "felony-murder" to him. He further testified that, though he read the statement of his rights, he did not really know what he was signing when he signed the statement. Asked if he read the statement, he said, "Well, I read what — some words, I couldn't make them out. Didn't know the word."

On cross-examination, defendant again stated that he did not understand what his rights were. He said, however, "I told them I was willing to make a statement and answer questions." When asked whether he understood the part of the waiver which indicated that he did not want a lawyer before he made the statement, defendant responded, "Well, I didn't think I needed one at the time." Defendant stated:

> "I said that I understood what I was doing and that no promises or threats had been made against me. I signed voluntarily. I think I had been served with the warrant charging me with murder. I signed Exhibit '4' (the incriminating statement) and I was trying to tell the truth about all of us coming down from Washington and the things that took place. I can't remember if the statement says the same thing that I told Mr. Norton. I signed it freely and voluntarily. . . ."

Upon completion of the evidence for the State and defendant on voir dire, the trial judge made full findings of fact. He found that defendant was fully apprised of his constitutional rights and read the paper writing quoted above entitled "Your Rights" and "Waiver of Rights," and thereupon stated to the officers that he was willing to make a statement and answer questions; that he did not want a lawyer at that time and understood and knew what he was doing. The court further found:

> "That the defendant understood that he had a right to remain silent; that anything that he said could be used against him; that he had a right to talk to a lawyer before answering any questions and to have one with him during questioning; that he understood that if he could not afford one, one would be appointed for him, and further understood that if he decided to answer questions he could stop at any time and request the presence of an attorney; that no one offered any reward to the defendant to cause him to make the statement; that he was not threatened or coerced in any way; that there is no indication, either by the defendant, who chose to take the stand in his own

behalf in this inquiry, nor by cross examination of the Officer Norton to indicate that the defendant was mistreated in any way;

". . . That the defendant prior to the time the questioning was begun had been read the charges against him and knew and understood that he was charged with murder of one Braxton Crawford Quick; . . ."

Based upon his findings of fact, the trial judge concluded that the challenged statement was "freely, knowingly and understandingly given by the defendant, after having been fully forewarned of his constitutional rights, and after having freely, knowingly, understandingly and voluntarily waived same." Thereupon the court ordered that the statement be admitted into evidence before the jury.

[2]   Defendant argues that he did not voluntarily, understandingly and intelligently make incriminatory statements or knowingly and intelligently waive his right to counsel, because he was unaware of the rule of law which could make him guilty of murder in the first degree although he did not actually commit the act which ended Quick's life. He relies upon the familiar cases of *Escobedo v. Illinois*, 378 U.S. 478, 12 L. ed 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona*, 384 U.S. 436, 16 L. ed 2d 694, 86 S. Ct. 1602. In *Escobedo* a young Mexican boy was taken to police headquarters for interrogation on a murder charge and, after prolonged questioning, made inculpatory statements. He was not advised of his right to remain silent and, although he made several requests to see his lawyer, and although his lawyer, who was in the building, made persistent efforts to see his client, he was denied the right to have his counsel present. His custodial statement was used at his trial and Escobedo was convicted of murder. The United States Supreme Court, reversing the trial court, stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the *suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent,* the accused has been denied 'The Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U.S., at 342, 9 L. ed 2d at 804, 93 ALR 2d 733, and

that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis ours)

In the case of *Miranda v. Arizona, supra,* the Court held that, unless other fully effective means are adopted to assure a person of his rights, certain procedural safeguards are essential. These, in effect, require that a suspect be warned: (1) that he has the right to remain silent, (2) that any statement he does make may be used as evidence against him in court, (3) that he has the right to counsel, either appointed or retained, prior to and during the interrogation, and (4) that if he is indigent, counsel will be appointed for him prior to any questioning, if he so desires.

It is pertinent to our decision of instant case to note that immediately following the pronouncement of these required safeguards, the Court then stated:

"After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

**[2, 3]** The very cases upon which defendant relies recognize the rule that a person may intelligently, knowingly and voluntarily waive his privilege against self-incrimination and his right to legal counsel. This principle is firmly established in North Carolina. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581; *State v. Gray, supra; State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511. We do not interpret the authorities — state or federal — to hold that a defendant must be familiar with the rules of law in order to intelligently waive his right to counsel and his privilege against self-incrimination. In the case before us for decision there was plenary competent evidence to support the findings by the trial judge that defendant's statement "was freely, knowingly, and understandingly given by defendant, after having been fully forewarned of his constitutional rights, and after having freely, knowingly, understandingly and voluntarily waived same."

**[4]** When the trial judge's findings are based on competent evidence in the record, they are conclusive, and the reviewing court cannot properly set aside or modify such findings. *State v. Wright, supra; State v. Gray, supra.* We therefore hold that the trial judge properly admitted into evidence the custodial statements made by defendant to police officers.

[5]    Defendant also contends that since he was charged with a capital felony, he could not waive his right to counsel at any time after his arrest. We will consider some of the more recent decisions on this question, including some of those cited by defendant in support of his contention.

In the case of *State v. Wright, supra,* defendant was charged with the capital crime of rape. Upon trial, the trial judge admitted inculpatory statements made by defendant to police officers while he was in custody, no counsel being present at the time to represent him. The Court, holding the statements were properly admitted, stated:

> "Defendant's *written* waiver was to 'answer questions and make a statement' without a lawyer. There is competent evidence to support the finding that defendant had been fully advised of his constitutional rights and that this waiver was made voluntarily, knowingly and intelligently. Hence, such findings by the trial judge are conclusive, and 'no reviewing court may properly set aside or modify those findings. . . .' *State v. Gray, supra.* Therefore, the questions asked by the officers and the answers given by defendant relative to removal of the screen, entry of the Byrd home through the window, and touching the woman but not raping her, became competent evidence and were properly admitted for consideration by the jury."

The defendant in the case of *State v. Thorpe,* 274 N.C. 457, 164 S.E. 2d 171, was charged with the capital felony of first degree burglary. The evidence tended to show that defendant was a retarded, uneducated youth, and that he was questioned by officers who failed to advise him of his right to counsel during the in-custody interrogation. Defendant Thorpe's inculpatory statement was admitted into evidence over objection. Holding that the statement was erroneously admitted, the Court stated:

> "*The Court, at the conclusion of the voir dire examination, did not make any findings with respect to counsel. The evidence before the Court was not sufficient to justify a finding that counsel at the interrogation was offered, or the defendant's right thereto was understandably waived.* In concluding the defendant was entitled to have counsel at his interrogation, and the right was not waived, we are no longer permitted to rely on the presumption that a confession is deemed to be voluntary until and unless the contrary is shown." (Emphasis ours)

The case of *Carnley v. Cochran,* 369 U.S. 506, 8 L. ed 2d 70, 82 S. Ct. 884, presented the question of waiver of counsel where defend-

ant was charged with a serious non-capital crime. The United States Supreme Court there said:

> "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

This quotation was approved in *Miranda v. Arizona, supra.*

These recent and well documented cases clearly stand for the rule that even in capital offenses a defendant may intelligently and understandingly waive counsel during an in-custody interrogation.

In the instant case there is plenary evidence in the record to support the conclusion of the trial judge that defendant McRae intelligently and understandingly waived counsel.

In the trial below we find

No error.