STATE OF NORTH CAROLINA v. CRAVEN TURNER, JR.

No. 6

(Filed 14 March 1973)

1. Constitutional Law § 32— requirement that State furnish counsel — indigency as prerequisite

   The requirement that the State furnish counsel to each defendant charged with a criminal offense beyond the class of petty misdemeanor is conditioned upon a showing of indigency and inability to procure counsel for that reason.

2. Constitutional Law § 32— defendant not indigent — waiver of counsel — sufficiency of oral waiver

   Where the evidence tended to show that, at the time of his arrest and confession, defendant had jobs which paid him $650 per month, that his wife's income was $480 per month, that he owned two automobiles and that he owned a stereo, a color television set and other household furnishings, defendant was not an indigent but was in a position to waive counsel, could do so orally, and did in fact make such waiver.

3. Criminal Law § 86— testimony of interested witness — admissibility

   In a first degree murder prosecution testimony by a witness that she and defendant "was going with each other" and that she knew defendant was married was admissible together with testimony that defendant had asked the witness questions with respect to the victim's habit of cashing checks since the attitude of the witness and her interest in the case had bearing on the weight to be given the testimony by the jury.

APPEAL by defendant from *McConnell, J.,* August 21, 1972 Criminal Session, UNION Superior Court.

In this criminal prosecution the defendant, Craven Turner, Jr., was indicted by a Stanly County Superior Court Grand Jury at the February 22, 1971 Session for the capital felony of murder in the first degree. The indictment charged the killing of James Alexander Howell on January 5, 1971.

The defendant was first tried at the May 31, 1971 Special Criminal Session, Stanly Superior Court. The evidence disclosed that the defendant and one Johnny James Blackmon shot and killed James Alexander Howell in the attempt to rob him. The evidence further disclosed that Blackmon actually did the shooting. The two defendants were tried separately. Blackmon was convicted and received a death sentence. He was awarded a new trial. *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123. Turner was convicted and given a life sentence. He also received a new trial. *State v. Turner,* 281 N.C. 118, 187 S.E. 2d 750. Turner's new trial was based on the ground the record did not affirmatively show that he had waived his right to counsel at the in-custody interrogation. After this Court remanded Turner's case to the Superior Court of Stanly County for another trial, the defendant applied for and was granted a change of venue on account of the unfavorable publicity in his and Blackmon's first trials. The court removed the case to Union County.

The evidence at the trial now under review disclosed that Johnny James Blackmon and the defendant Craven Turner, Jr., pursuant to a common plan, attempted to hold up and rob James Alexander Howell. In the attempt Blackmon shot and killed the intended victim.

The defendant Turner, having been fully advised of his rights, specifically waived his right to remain silent and to have counsel present. He stated to Sheriff McSwain that he wanted to make a full confession "to get it off my brain." He told Sheriff McSwain that he and Blackmon planned to hold up and rob Howell and explained how he and Blackmon drove to Howell's home in the early morning and waited for him to start to work. As he sought to enter his truck, they made an effort forcibly to take his money. Howell resisted and Blackmon shot and killed him. Both fled from the scene in Turner's automobile.

At the new trial the State undertook to introduce Turner's confession. Upon objection, the court conducted a voir dire examination, made detailed findings of fact, and concluded that the defendant was not indigent and that his confession was free and voluntary. Counsel having been waived, the confession was properly admissible in evidence. The defendant excepted when the confession was offered before the jury.

The defendant objected to the confession upon the grounds that he was an indigent not represented by counsel and that he

did not waive *in writing* his right to counsel at the in-custody interrogation. The court overruled the objections and admitted the confession in evidence. The jury returned its verdict finding the defendant guilty of murder in the first degree and again recommended the punishment be life imprisonment. From the court's sentence in accordance with the jury's recommendation; the defendant appealed.

*Robert Morgan, Attorney General, by Howard P. Satisky, Assistant Attorney General, for the State.*

*James C. Davis and Clarence E. Horton, Jr., for defendant appellant.*

HIGGINS, Justice.

The defendant brings forward two assignments of error on which he relies for a new trial. His first assignment challenges the admission of his confession on these grounds: First, it was not in writing; and second, it was made in the absence of counsel. He cites as authority, *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561, and the decision of this Court on his first appeal. *State v. Turner, supra.*

[1] The requirement that the State furnish counsel to each defendant charged with a criminal offense beyond the class of petty misdemeanor is conditioned upon a showing of indigency and inability to procure counsel for that reason. G.S. 7A-450; *State v. Wright,* 281 N.C. 38, 187 S.E. 2d 761; *State v. Lynch, supra; State v. Green,* 277 N.C. 188, 176 S.E. 2d 756; *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37.

[2] The evidence before the court disclosed by the defendant's own affidavit that at the time of his arrest and confession, he had jobs which paid him $650.00 per month; that he had $400.00 "coming to him"; that his wife's income was $480.00 per month; that he owned two automobiles (a 1965 Mustang and a 1970 Chevrolet) on which one payment of $179.00 was due. In addition to his other household furnishings, he had a stereo of the value of $300.00 and a color television set worth $1500.00. On his own showing, he was not an indigent. Hence, he was in a position to waive counsel and actually did so. A written waiver was not required. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602.

[3]   The defendant's second assignment of error challenged the evidence of the State's witness Katrina Tyson who testified that on and prior to January 5, 1971, she worked for Almond Brothers Poultry near Albemarle. She knew James Alexander Howell and that he cashed checks on Tuesday of each week. Shortly before January 5, 1971, she had a conversation with the defendant, Craven Turner, Jr., who asked her if James Alexander Howell "still cashed checks on Tuesday, and I told him 'yes.' . . . I knew James Alexander Howell from the time I started my employment at Almond Brothers Poultry. I knew that he cashed checks on Tuesday of each week regularly when we got paid off."

Prior to the above testimony, the witness in answer to the questions of the solicitor, testified giving her age as nineteen and that she and the defendant "was going with each other. . . . We were out one night and he asked me whether the man still cashed checks on Tuesday and I told him 'yes.' " The witness testified she knew the defendant was married. The foregoing testimony was given in reply to certain questions by the solicitor. Actually, the answers went beyond the scope of the questions. The defendant did not move to strike and did not cross-examine except as to Howell's habit of cashing checks on each Tuesday.

The defendant argues here that the State by the above testimony offered proof of the defendant's bad character and inasmuch as he did not testify, his character was not in issue. Hence, the evidence related thereto should have been excluded on his objection.

Miss Tyson, when interviewed by Sheriff McSwain, reported that shortly before Tuesday, January 5, 1971, the defendant Turner asked her if the man (Howell) still cashed checks on each Tuesday. She replied "yes." This evidence was material on the question of motive for the robbery and tended to buttress Turner's confession. The intimate relationship between the witness and the defendant was properly before the jury whose duty it was to weigh the evidence. The attitude of the witness, interest or lack of it, has bearing on the weight of the testimony. Incriminating evidence from a friend ordinarily should outweigh the same evidence from a stranger or an enemy. The defendant's objection to Miss Tyson's testimony is not sustained.

Two juries have heard the evidence and on each occasion has found the appellant guilty of murder in the first degree, but made the recommendation that his life be spared.

After careful review we conclude that prejudicial error in the second trial is not disclosed.

No error.