STATE OF NORTH CAROLINA v. LARRY EUGENE THOMAS

No. 29

(Filed 14 November 1973)

**1. Criminal Law § 75— volunteered statements — absence of Miranda warnings**

Defendant's statement to a police officer when the officer first saw him that he had "shot the sucker" and was looking for the police to turn himself in and defendant's inquiry to an officer after he had been arrested, "Bill, is the dude dead?" were volunteered and spontaneous and were properly admitted in evidence although defendant had not been given the *Miranda* warnings and had not waived his constitutional rights.

**2. Criminal Law § 75— waiver of counsel and right of self-incrimination**

A person may intelligently, knowingly and voluntarily waive his privilege against self-incrimination and his right to legal counsel.

**3. Criminal Law § 75— admission of signed confession**

Defendant's signed statement setting forth details of the shooting of deceased was properly admitted in evidence where defendant was twice given the *Miranda* warnings prior to making the statement and defendant affirmatively waived his right to legal counsel and freely and voluntarily made the signed statement.

**4. Criminal Law § 118— instructions on contentions**

A judge is not required by law to state the contentions of the parties, but when he does give the contention of the State on a particular phase of the case, it is error to fail to give defendant's opposing contention arising out of the evidence on the same aspect of the case.

**5. Criminal Law § 163— objection to review of evidence and contentions — waiver**

Objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal.

**6. Criminal Law § 118— first degree murder — instructions on contention of intoxication**

In a first degree murder case in which the court reviewed evidence that defendant had a faint odor of alcohol about him and that defendant stated he had been drinking, the court stated that defendant contended "that you should consider that in this case," and the court stated that the State contended defendant was not intoxicated, defendant was not prejudiced by failure of the court to state further defendant's contention regarding intoxication where the court thereafter fully explained the effect of intoxication on the crime charged.

7. **Criminal Law § 112— failure to define reasonable doubt**
    The trial court is not required to define "reasonable doubt" in the absence of a special request for such instruction.

APPEAL by defendant from *McConnell, J.,* at the 12 February 1973 Session of UNION Superior Court.

On an indictment proper in form, defendant was tried and convicted of murder in the first degree of Michael Eugene Massey. From a judgment imposing a sentence of life imprisonment, defendant appealed.

The State's evidence tends to show that prior to 30 December 1972 Wanda Faye Allsbrooks and defendant had been going together for approximately one and one-half years. During this time Miss Allsbrooks dated no one but defendant. On 22 December 1972 Miss Allsbrooks, against defendant's wishes, ended this relationship. Shortly thereafter she met the deceased, Michael Eugene Massey, and dated him on two occasions prior to 30 December 1972. On 28 December 1972 the deceased was visiting Miss Allsbrooks at her house on John Street in Monroe when defendant came by. Defendant wanted to talk to her, but she told him to leave which he did.

On 30 December 1972 around 10:30 p.m. the deceased was again visiting Miss Allsbrooks. She and the deceased, together with deceased's cousin, Jimmy Massey, were sitting in the deceased's car in front of her house. The deceased, who was sitting in the driver's seat, opened his door to let his cousin get out of the car. At this time Miss Allsbrooks saw defendant walking toward the car with a rifle in one hand and a pistol in the other. She told deceased that defendant had two guns and to shut the door. As the deceased was shutting the door, defendant took the rifle and knocked the door back open. Defendant then grabbed the deceased by the collar, told him that he was going to kill him, and pulled him out of the car. Miss Allsbrooks jumped out of the car and got between the deceased and defendant. The deceased pushed her out of the way, and defendant then started firing the rifle at deceased. After shooting the deceased several times, defendant turned to Miss Allsbrooks and said: "I'm going to give you two seconds to start running." Miss Allsbrooks ran to her home and did not come out again until she saw defendant walking north on John Street away from her house.

A few minutes after the shooting Officer James Sutton of the Monroe Police Department arrived at the scene. Miss Allsbrooks told him that defendant had shot deceased. About five minutes later Sutton observed defendant with a rifle in his hand walking south on John Street towards the deceased's car. Sutton went to his police car, got a shotgun, and started walking toward defendant. As Sutton approached defendant, defendant raised the rifle in the air and before Sutton said anything, defendant told him that he had "shot the sucker" and was looking for the police to turn himself in. Sutton then advised defendant of his rights. Defendant said he was familiar with them since he had "been through it before." Officer Sutton testified that he detected a faint odor of alcohol on defendant's breath.

After defendant had been at the Monroe Police Department approximately one hour, Sergeant Bill Helms—whom defendant knew—arrived. When defendant saw Helms he immediately asked: "Bill, is the dude dead?" Helms said he could not answer that question or even talk to defendant until defendant had been given his rights. Helms testified that after advising defendant of his rights, he specifically asked defendant if he wanted a lawyer. Defendant replied that he did not want a lawyer, and that if he needed an attorney it would be left up to his family and his brothers to obtain one the following day. Helms then asked defendant to make a statement, and defendant readily agreed to do so. Helms again asked defendant if he wanted an attorney to be present before he made the statement, and defendant again replied that he did not want an attorney. Defendant then signed a waiver of rights form, and made the following statement that was written by Helms, signed by defendant, and introduced at trial:

"I told some people I mess around with that somebody was going to die tonight, the first person who messed with me. I left home with my Remington .22 caliber rifle and saw a car parked in front of 408 John Street. Me and my girl, Wanda Allsbrooks, had broke up and she was going with this dude. When I got to the car this dude opened the door and got out. The dude said he was going in the trunk and get some boxing gloves so we could duke. We started talking and arguing. I don't know what we were arguing about. This dude ran his hand in his pocket and I lit him up. I do not know how many times I shot but I stung him real good. I had sixteen shots in the gun and emptied it. I

don't remember if I shot him after he fell. I might have. All I remember is that I shot him. I left this dude lying in the road and went to my grandmother's and told her to call the police because I had killed somebody. I left her house with the gun and walked back to the car where this dude was lying on the ground. The police came and Officer Sutton got the gun. For a period of days I couldn't work for thinking if I was going to kill him or not. I really didn't have a reason because I didn't know his name or who he was. When I started shooting that gun, I couldn't stop." Signed "Larry Thomas" at 1:15 a.m., December 31, 1972.

Helms testified that after defendant made the statement defendant was allowed to read it for accuracy. Defendant informed Helms that the statement was correct except that it was a Remington rifle instead of a Winchester, and it was so corrected. Helms further testified that defendant admitted that he had a .22 caliber pistol with him at the time of the shooting, but that he had thrown it away after he left the scene of the crime. On cross-examination Helms testified that although he did not smell any odor of alcohol about defendant on the evening in question, he did ask defendant if he had had any alcoholic beverage prior to the shooting. Defendant replied that he had had eight or nine drinks of liquor and four beers during either the early part of that night or the afternoon—he could not remember when.

It was stipulated that the deceased died on 30 December 1972 from multiple gunshot wounds in the neck and left ear.

Defendant did not testify or offer any evidence.

*Attorney General Robert Morgan and Associate Attorney Norman L. Sloan for the State.*

*Joe P. McCollum, Jr., for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the admission of his alleged "confession" into evidence. From defendant's brief it is not entirely clear whether this assignment of error relates solely to his signed statement or also relates to the two inculpatory statements allegedly made by him to Officer Sutton and Sergeant Helms prior to his making the signed statement. The first statement was made before he was arrested. When Officer Sut-

ton first saw him and before Sutton said anything to him, defendant said he had "shot the sucker" and was looking for the police to turn himself in. The second statement was made after he had been arrested for murder and was being held at the Monroe Police Department. When Sergeant Bill Helms—whom defendant knew—walked in, defendant spontaneously inquired: "Bill, is the dude dead?"

*Miranda* warnings are only required to be given when a person is being subjected to "custodial interrogation"; that is, "questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added.) *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L.Ed. 2d 694, 706, 86 S.Ct. 1602, 1612 (1966). A volunteered confession is admissible even in the absence of warnings or waiver of rights. *Miranda v. Arizona, supra; State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973); *State v. Haddock*, 281 N.C. 675, 190 S.E. 2d 208 (1972). See also *State v. Inman*, 269 N.C. 287, 152 S.E. 2d 192 (1967). Measured by *Miranda* standards, we hold that the two statements made by defendant to Officer Sutton and Sergeant Helms were spontaneous and volunteered, and were properly admitted into evidence.

Defendant also gave Sergeant Helms a signed statement setting forth the details of the shooting of the deceased. When this statement was offered into evidence, defendant objected and the court properly held a *voir dire* to determine the voluntariness of the statement. *Jackson v. Denno*, 378 U.S. 368, 12 L.Ed. 2d 908, 84 S.Ct. 1774 (1964); *State v. Barber*, 278 N.C. 268, 179 S.E. 2d 404 (1971); *State v. Catrett*, 276 N.C. 86, 171 S.E. 2d 398 (1970). After finding that defendant had been properly warned of his constitutional rights, the trial court concluded:

> "The court at this time finds that the statement was freely, voluntarily and intelligently made, that the defendant was not under the influence of any intoxicating beverage or narcotic drug, and that Officer Helms had known him for a number of years and that he was normal and rational, and that he was advised of his constitutional rights before he made any statement and waived his right to have an attorney present by affirmatively stating he did not want an attorney present after being advised that he had a right to have an attorney present."

**[2]** It is a well-established principle in North Carolina that a person may intelligently, knowingly, and voluntarily waive his privilege against self-incrimination and his right to legal counsel. *State v. Turner,* 283 N.C. 53, 194 S.E. 2d 831 (1973); *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37 (1970). In this case defendant was twice given the warnings required by *Miranda v. Arizona, supra,* and as Mr. Chief Justice Warren there said:

> ". . . After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. . . . " 384 U.S. at 479, 16 L.Ed. 2d at 726, 86 S.Ct. at 1630.

**[3]** The findings of the trial judge that defendant waived his right to legal counsel and freely and voluntarily made the signed statement are fully supported by competent and uncontradicted evidence. These findings, therefore, are conclusive on appeal and this Court cannot properly set aside or modify them. *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972); *State v. Harris,* 279 N.C. 177, 181 S.E. 2d 420 (1971); *State v. McRae, supra; State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). Accordingly, we hold that the trial judge properly admitted into evidence defendant's signed statement.

**[4]** Defendant next alleges that the trial judge erred in his charge to the jury by stating the State's contention regarding the intoxication of defendant and not stating defendant's contention. A judge is not required by law to state the contentions of the parties, but when he does give the contention of the State on a particular phase of the case, it is error to fail to give defendant's opposing contention arising out of the evidence on the same aspect of the case. *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968); *State v. King,* 256 N.C. 236, 123 S.E. 2d 486 (1962). The trial judge's charge in this case, however, reveals no support for defendant's allegations. The judge charged on contentions as follows:

> "Officer Sutton on cross examination testified that he smelled a faint odor of alcohol about the defendant at the time he had him in the car; he didn't smell it out on the street but he smelled it when he got him in the police car.

> "Officer Helms testified that the defendant, before he made a statement to him about what occurred there, said he

had had eight or nine drinks and a number of beers, but didn't say exactly when he had had them.

*"The defendant would contend that you should consider that in this case.* (Emphasis added.) . . . The State would contend that he was not intoxicated, that the officers knew him and that they testified that he was not. That is a matter for you to determine."

The trial judge further charged on the effect of intoxication as follows:

". . . [V]oluntary intoxication is not a legal excuse for crime. However, if you find that the defendant was intoxicated, you should consider whether this condition affected his ability to formulate the specific intent which is required for the conviction of first degree murder. In order for you to find the defendant guilty of first degree murder, you must find beyond a reasonable doubt that he killed the deceased with malice and in the execution of an actual specific intent to kill, formed after premeditation and deliberation. If, as a result of intoxication, the defendant did not have the specific intent to kill the deceased, formed after premeditation and deliberation, he is not guilty of first degree murder. Therefore, I charge you that if, upon considering the evidence with respect to the defendant's intoxication, you have a reasonable doubt as to whether the defendant formulated the specific intent required for a conviction of first degree murder, you will not return a verdict of guilty of first degree murder, but will consider whether you find the defendant guilty of second degree murder, as I have heretofore charged you, or not guilty."

[5, 6] The general rule in this State is that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal. *State v. Tart*, 280 N.C. 172, 184 S.E. 2d 842 (1971); *State v. Williams*, 279 N.C. 515, 184 S.E. 2d 282 (1971); *State v. Butler*, 269 N.C. 733, 153 S.E. 2d 477 (1967). No such objections were made in this case. Moreover, at the end of the charge the trial judge asked if there were any requests for further instructions. Defense counsel replied in the negative. In view of the court's full explanation on the effect of intoxication, we do

not see how defendant could have been prejudiced by the failure of the court to further state defendant's contention. This assignment is without merit.

[7] Lastly, defendant contends that the trial court erred in its charge by not defining "reasonable doubt." In the absence of a special request, the trial court is not required to define the term "reasonable doubt." *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971); *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971); *State v. Potts,* 266 N.C. 117, 145 S.E. 2d 307 (1965). Defendant made no such request, and therefore it was not necessary for the court to define this term.

Defendant has had a fair trial, free from prejudicial error. The jury's verdict is fully supported by the evidence, and the judgment must therefore be upheld.

No error.