**STATE v. TUCKER**

[109 N.C. App. 565 (1993)]

STATE OF NORTH CAROLINA v. JAMES CHRISTOPHER TUCKER

No. 9129SC885

(Filed 6 April 1993)

1. **Evidence and Witnesses § 1229 (NCI4th)— murder—confession to relative—deputy in another county—no Fifth Amendment violation**

The trial court properly denied a murder defendant's motion to suppress inculpatory statements as violating his Fifth Amendment rights where defendant was imprisoned pursuant to a contempt citation for violation of a child custody order; he denied having any knowledge of the child's whereabouts; officers initiated a missing persons investigation; an S.B.I. agent and Polk County deputies attempted to question defendant, who indicated that he did not wish to answer any questions until he had been allowed an attorney; a Polk County deputy sent a PIN message to the Cumberland County Sheriff's Department, where defendant's uncle by marriage, McNeely, was employed as a deputy sheriff; the message requested information concerning McNeely's relationship with defendant; McNeely contacted the Polk County Sheriff's Department, was advised that the child was missing, and traveled to Polk County; McNeely was given permission to talk with defendant but defendant denied any knowledge of the whereabouts of the child; McNeely left a telephone number with defendant and was called the next day; McNeely went to the jail and defendant related the details of the child's death and the whereabouts of the body; McNeely then suggested that defendant talk to the S.B.I. agent; the agent advised defendant of his rights; defendant signed a written waiver; and defendant gave the agent a detailed statement. Defendant initiated the conversation in which he gave his incriminating statement to McNeely, defendant was not being held on any criminal charges at that time, the authorities did not know that a crime had been committed, McNeely was not acting in the capacity of a law enforcement official or an agent for the State, and defendant further incriminated himself by freely and voluntarily repeating essentially the same incriminating information to an S.B.I. agent after the agent read defendant his rights and obtained a waiver.

**Am Jur 2d, Evidence § 554.**

2. **Constitutional Law § 264 (NCI4th)— murder—confession— Sixth Amendment right to counsel—no violation**

    The trial court properly ruled that a murder defendant's Sixth Amendment right to counsel was not violated by inculpatory statements where defendant was incarcerated pursuant to a contempt order for violating a child custody order; officers instituted a missing persons investigation for the child; defendant indicated that he did not wish to answer questions until he had been allowed an attorney; an uncle by marriage who was a deputy in another county heard of the investigation and was allowed to talk to defendant; defendant initially denied any knowledge of the child's whereabouts, then had the uncle called back to the jail; defendant gave the uncle a detailed statement; the uncle suggested that defendant talk to the S.B.I. agent; the S.B.I. agent read defendant his rights and obtained a written waiver; and defendant gave the agent a statement. The Sixth Amendment is not applicable because the uncle was not acting in the capacity of a law enforcement official or agent and the investigation had not reached the point of the accusatory stage or the point when adversary judicial proceedings had been initiated against defendant. Moreover, defendant initiated the second meeting with the uncle and freely and voluntarily gave him an incriminating statement, and defendant waived his rights before the conversation with the S.B.I. agent.

    **Am Jur 2d, Criminal Law §§ 743 et seq., 972 et seq.**

3. **Searches and Seizures § 23 (NCI3d)— murder—search warrant based on confession—motion to suppress denied**

    The trial court properly denied a murder defendant's motion to suppress evidence obtained pursuant to a search warrant that was based upon defendant's incriminating statements where the incriminating statements were not obtained in violation of the defendant's constitutional rights.

    **Am Jur 2d, Searches and Seizures § 48.**

    **Validity of consent to search given by one in custody of officers. 9 ALR3d 858.**

STATE v. TUCKER

[109 N.C. App. 565 (1993)]

4. Evidence and Witnesses § 1242 (NCI4th)— murder—
incriminating letter to jailer—admissible

A statement written by a murder defendant and given
to a jailer trying to explain what he had done was not barred
as a violation of defendant's Fifth and Sixth Amendment rights
because it was freely and voluntarily given.

**Am Jur 2d, Evidence §§ 555-557, 614; for general discussion of an accused's rights and privileges during the period of police custody, see 21A Am Jur 2d, Criminal Law §§ 788 et seq.**

**What constitutes "custodial interrogation" within rule of Miranda v. Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.**

Appeal by defendant from judgment entered 4 February 1991 by Judge Zoro J. Guice, Jr., in Polk County Superior Court. Heard in the Court of Appeals 22 October 1992.

Defendant, James Christopher Tucker, was arrested on a charge of second degree murder. On 28 January 1991, the matter was tried before a jury in the Polk County Superior Court with Judge Zoro Guice, Jr. presiding. The jury returned a verdict of guilty of second degree murder. From entry of this judgment, defendant gave a timely notice of appeal.

*Prince, Youngblood, Massagee & Jackson, by J. Michael Edney and Sharon B. Ellis, for defendant-appellant.*

*Attorney General, Lacy H. Thornburg, by Assistant Attorney General, D. Sigsbee Miller, for State-Appellee.*

JOHNSON, Judge.

James Christopher Tucker, defendant, and Sandra Hill were the parents of a two year old boy, Nathan Adam Hill. At the time Ms. Hill became pregnant, she and defendant were living together; however, prior to Nathan's birth, the couple stopped dating. By the time Nathan was born, Ms. Hill had moved out and was residing with another male. Nathan resided with Ms. Hill until December 1988.

In December 1988, the Polk County Department of Social Services began to suspect child abuse in the home of Ms. Hill. Subsequently, Nathan resided with defendant until March 1989. He returned to Ms. Hill's residence in March 1989 and stayed there until September 1989 when he was returned to defendant's residence. Ms. Hill last saw her son in November 1989.

In December 1989, Ms. Hill instituted a child custody action because she had not been allowed to see Nathan. In the child custody action, Ms. Hill obtained an order of custody and subsequently attempted to enforce this order by a contempt citation. Pursuant to the contempt citation, defendant was imprisoned in the Polk County Jail on 12 January 1990 until such time as he produced Nathan Adam Hill.

While defendant was in jail for contempt, he was questioned by the Polk County deputies as to the whereabouts of the child. Defendant denied having any knowledge of Nathan's whereabouts. The law enforcement officers then initiated a missing persons investigation and the State Bureau of Investigation became involved. S.B.I. Agent Pruitt and the Polk County deputies attempted to question defendant, but he indicated that he did not wish to answer any questions until he had been allowed an attorney.

On 12 January 1990, a deputy with the Polk County Sheriff's Department sent a PIN message to the Cumberland County Sheriff's Department where defendant's uncle by marriage, David McNeely, was employed as a deputy sheriff. The PIN message requested information concerning Mr. McNeely's relationship with defendant. Upon receipt of the message, Mr. McNeely contacted the Polk County Sheriff's office. He was advised that Nathan Hill was missing. On 16 January 1990, Mr. McNeely traveled to Polk County. Mr. McNeely was given permission to talk to defendant but in the brief conversation between defendant and Mr. McNeely, defendant denied any knowledge concerning the whereabouts of the child. Mr. McNeely then gave defendant a phone number in the event that defendant needed to contact him.

The next morning Mr. McNeely received a call from a person who identified herself as Melinda Waters, advising him that defendant wanted to talk to him. Mr. McNeely went to the jail and defendant related to Mr. McNeely the details of the child's death and the whereabouts of the child's body. Mr. McNeely then suggested that defendant talk to S.B.I. Agent Pruitt.

STATE v. TUCKER

[109 N.C. App. 565 (1993)]

On 17 January 1990, S.B.I. Agent Pruitt saw defendant after he had talked to Mr. McNeely. Agent Pruitt advised defendant of his rights and defendant signed a written waiver of those rights. Defendant then gave a detailed statement to Agent Pruitt.

Based on the information provided, law enforcement officers obtained a search warrant and went to defendant's property. They found the body of two year old Nathan in a shallow grave at the bottom of an embankment. A search for evidence inside defendant's mobile home revealed blood wipings on the counter top and at the end of the dining room table.

Between 17 January 1990 and 1 March 1990, defendant handed a two-page handwritten letter to Nick Ross who was a jailer with the Polk County Sheriff's Department. In the letter, defendant stated "I was on cocaine, for one thing, and another was not working, being cooped up in the house all day. I caught myself being mean to him for no reason. I just lost control of everything."

An autopsy performed by Dr. Robert L. Thompson of the North Carolina Medical Examiner's office revealed that Nathan had died as a result of acute peritonitis. Dr. Thompson expressed an opinion that the injuries were likely caused by blunt trauma intentionally inflicted. As a result of the trauma, an infection developed which resulted in the child's death three or four days later.

[1] By defendant's first assignment of error, he contends that the trial court committed reversible error by denying his motion to suppress evidence of certain statements made by defendant because such statements were obtained in violation of his Fifth and Fourteenth Amendment rights. We find this contention without merit.

The Fifth Amendment of the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, provides a criminal suspect with the right not to be forced to incriminate himself. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694 (1966). Since the landmark case of *Miranda*, police have been required to inform a suspect of their rights and to obtain a waiver thereof as a precondition for conducting custodial interrogation. Miranda warnings are only required when an accused is about to be subjected to custodial interrogation. *State v. Fletcher and State v. St. Arnold*, 279 N.C. 85, 181 S.E.2d 405 (1971).

Custodial interrogation is a questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom. *State v. Thomas*, 284 N.C. 212, 200 S.E.2d 3 (1973). The Fifth Amendment provides a defendant with an absolute right to have counsel present during all custodial interrogation by police officers. *Miranda*, 384 U.S. at 436, 16 L.Ed.2d at 694. Once an accused has invoked this right to have counsel present during custodial interrogation, no further interrogation may constitutionally occur until counsel has been consulted or made available. *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed.2d 378, *reh'g denied*, 452 U.S. 973, 69 L.Ed.2d 984 (1981). Any statement obtained as a result of such further police-initiated interrogation is not admissible. *Id.* However, the *Miranda* Court recognized, "any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . ." *Miranda*, 384 U.S. at 478, 16 L.Ed.2d at 694.

Defendant made motions to suppress the statements made to David McNeely and to S.B.I. Agent Pruitt. The trial judge conducted a lengthy voir dire hearing on defendant's motions and later made detailed findings of fact and conclusions of law in support of its decision. The court found that the statements of the defendant to David McNeely and S.B.I. Agent Pruitt were freely, voluntarily, and understandingly made; that none of the defendant's constitutional rights were violated; and that the said statements were admissible into evidence at trial.

At trial, the evidence tended to show that defendant initiated the conversation in which he gave his incriminating statement to Mr. McNeely, and that at the time, defendant was not being held on any criminal charges, nor did the authorities know that a crime had been committed. Although Mr. McNeely was a sheriff for the Cumberland County Sheriff's Department, he was not acting in the capacity of a law enforcement official or an agent for the State. Mr. McNeely's desire to assist in the case grew out of natural concern for his nephew, the defendant, and also out of concern for the missing child whom he had at one time discussed adopting. Statements will be admissible where they are voluntarily given to persons not acting in their official capacity as law enforcement officials or not acting as agents of the State. *State v. Johnson*, 29 N.C. App. 141, 223 S.E.2d 400, *disc. review denied*, 290 N.C. 310, 225 S.E.2d 831 (1976).

STATE v. TUCKER

[109 N.C. App. 565 (1993)]

After defendant had voluntarily given incriminating statements to Mr. McNeely, defendant further incriminated himself by talking to S.B.I. Agent Pruitt who first read defendant his rights, and then obtained a knowing, voluntary and intelligent waiver thereof. Defendant then freely and voluntarily repeated essentially the same incriminating information to Agent Pruitt that he had given to Mr. McNeely. A statement is admissible into evidence where the defendant's statement was freely, knowingly, and understandingly given by defendant, after having been fully forewarned of his constitutional rights, and after having freely, knowingly, understandingly and voluntarily waived the same. State v. McRae, 276 N.C. 308, 172 S.E.2d 37 (1970).

The trial court's findings of fact following a voir dire hearing on the voluntariness of a confession are conclusive on appeal if supported by competent evidence in the record. State v. Jackson, 308 N.C. 549, 304 S.E.2d 134 (1983). "No reviewing court may properly set aside or modify those findings if so supported. This is true even though the evidence is conflicting." State v. Massey, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986). We hold that there was competent evidence to support the trial court's findings of fact and that the findings of fact support the court's conclusions of law. The trial court properly denied defendant's motion to suppress the statements as violating his Fifth Amendment rights.

[2] By defendant's second assignment of error, he contends that the trial court erred in denying his motion to suppress the evidence of certain statements because such statements were obtained in violation of his Sixth and Fourteenth Amendment rights. We disagree.

The Sixth Amendment of the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, guarantees that in all criminal prosecutions an accused shall enjoy the right to have assistance of counsel for his defense. Gideon v. Wainright, 372 U.S. 335, 9 L.Ed.2d 799 (1963). The Sixth Amendment right attaches at the initiation of adversary judicial criminal proceedings. Kirby v. Illinois, 406 U.S. 682, 32 L.Ed.2d 411 (1972). Police may not initiate interrogation of a defendant whose Sixth Amendment right has attached. Michigan v. Jackson, 475 U.S. 625, 89 L.Ed.2d 631 (1986).

Interrogation, as that term is used in Sixth Amendment cases, refers to conduct of law enforcement which is deliberately and

designedly set out to elicit incriminating information. *Brewer v. Williams*, 430 U.S. 387, 51 L.Ed.2d 424 (1977). In order to trigger the application of the Sixth Amendment, the act in question must involve the conduct of a law enforcement official or someone acting as their agent. As discussed in the first assignment of error, Mr. McNeely was not acting in the capacity of a law enforcement official or agent in his contact with the defendant. Therefore, this is not a case in which the Sixth Amendment is applicable.

However, even if we were to find that Mr. McNeely was acting in his official capacity as a law enforcement official when he talked with defendant, the Sixth Amendment would still be inapplicable because at the time Mr. McNeely talked with defendant, the investigation had not reached the point of the accusatory stage and had certainly not reached the point when adversary judicial proceedings had been initiated against defendant. *Kirby*, 406 U.S. 682, 32 L.Ed.2d 411.

Defendant initiated the second meeting with Mr. McNeely at which time he freely and voluntarily gave him an incriminating statement. The statement voluntarily given to Mr. McNeely as a result of the session initiated by defendant did not violate defendant's Sixth Amendment right to counsel.

We also find that the statement given to S.B.I. Agent Pruitt by defendant was not in violation of his Sixth Amendment right to counsel. After defendant gave incriminating statements to Mr. McNeely, Mr. McNeely suggested that defendant talk to Agent Pruitt. Before their conversation commenced, Agent Pruitt read defendant his rights, and defendant knowingly, voluntarily and intelligently signed a written waiver of his rights. Defendant then proceeded to give a detailed statement to Agent Pruitt. Under these circumstances, we find the trial court properly ruled that defendant's constitutional right was not violated.

[3] By defendant's third assignment of error, he contends that the trial court erred in denying his motion to suppress evidence obtained pursuant to a search warrant that was based upon evidence obtained in violation of his constitutional rights. We find this argument meritless.

Law enforcement officers obtained a search warrant based on an affidavit containing information given to David McNeely by defendant. Once law enforcement officers searched the property

STATE v. TUCKER

[109 N.C. App. 565 (1993)]

of defendant, they found a shallow grave, 35 feet away from the house, with the body of the child buried therein. Defendant contends that the evidence obtained pursuant to the search of his premises is inadmissible because the information contained in the affidavit which was used to obtain the search warrant was elicited in violation of defendant's Fifth and Sixth Amendment rights.

As discussed above, this Court has already determined that the incriminating statements made were not obtained in violation of the defendant's constitutional rights, and therefore, can be used as the basis for probable cause in a validly issued search warrant. Accordingly, this Court finds that defendant's motion to suppress was properly denied by the trial court.

[4] By defendant's fourth assignment of error, he contends that the trial court erred by denying his motion to suppress a statement that was written by defendant and given to a jailer because such statement was obtained in violation of his constitutional rights. We find no merit in this argument.

After defendant had been charged with this crime and while still in custody, he wrote a letter to the jailer, Nick Ross, trying to explain what had been done. This unsolicited letter was not barred by a violation of defendant's Fifth and Sixth Amendment rights because it was freely and voluntarily given. The statement is therefore admissible.

By his final assignment of error, defendant contends that the evidence at trial was insufficient to support the findings of fact made by the trial judge. We have carefully reviewed the evidence and each of the court's findings and we find this assignment and all of defendant's assignments of error to be without merit. Defendant received a trial free of any prejudicial error.

We find no error.

Judges COZORT and LEWIS concur.